· 130 P.2d 29

**JAYNES v. HERON et al.**

No. 4610.

Supreme Court of New Mexico.

Aug. 18, 1942.

Motion for Rehearing and to Modify Opinion
Denied Nov. 6, 1942.

J. D. Mell and Anthony J. Albert, both of Sante Fe, for appellants.

Reed Holloman, of Sante Fe, for appellee.

Kenneth A. Heron, pro se, on motion to modify opinion.

BICKLEY, Justice.

Plaintiff (appellee) sued to quiet title to lands which he claimed to own by virtue of a tax certificate and deed based thereon.

The defendants (appellants) answered, challenging the validity of the tax sale certificates and the deed, on the ground that the property was not sold for taxes; that the taxes were erroneously or illegally charged, and for other reasons, the most important being that: "The defendants redeemed their lands."

Since our conclusion is that defendants redeemed the lands from the alleged tax sale, the other eleven points of attack up-

on the tax deed will not require discussion.

Bearing upon the issue of redemption, the court found:

"15. The Court finds that the evidence shows that Heron offered to pay to Martinez, the amount called for by the certificates involved herein provided the Treasurer would accept such payment as made under protest.

"16. The Court finds that Martinez refused to accept this offer.

"17. The Court finds that the evidence shows that Heron made no demands upon the Treasurer as a condition of his proferred payment under protest other than that the money be accepted as paid under protest."

The court concluded that defendants did not redeem the outstanding tax sale certificates. In this we think the court committed error.

From the record, we gather that the sole reason that Martinez, the Deputy Treasurer, gave for not being willing to accept the offered redemption money under protest, was that his principal, the County Treasurer, had ordered him not to accept money under protest.

The written opinion of the trial court states: "There is no statute authorizing a Treasurer to accept redemption money under protest." This is perhaps correct, but the privilege of paying redemption money under protest is not therefore foreclosed, because such privilege is not dependent upon statutory authority.

Section 141-404, N.M.S.A.1929, as amended by Chapter 143, Laws 1933, provides: "141-404. Erroneous payments. Taxes paid voluntarily to any officer authorized to collect the same shall not be refunded or rebated in any instance. Where any person shall pay any tax, penalty, interest, or costs under protest, claiming the same to be erroneously or illegally charged, he may present his claim to the district court by petition, and it shall be the duty of the district attorney, upon notice, to appear in response to such petition without the necessity of the issuing or service of any process, and the court shall hear and determine the matter and enter such judgment as the facts may require. Taxes paid under protest shall, by the treasurer, be held in a suspense fund until legal proceedings for the determination of the right thereto shall have been concluded, at which time they shall be disposed of in accordance with the final judgment in such proceedings; Provided, that in case no legal proceedings shall · be effectively begun within sixty days from the date of the payment thereof, such moneys shall thereupon be funded and distributed as other taxes, and shall thereafter not be subject to repayment."

The first sentence: "Taxes paid voluntarily to any officer authorized to collect the same shall not be refunded or rebated in any instance.", declares no new principle. It is merely declaratory of well

known legal principles independent of statute.

In 61 C.J., Taxation, § 1271, it is said: "Payment under Protest—a In Absence of Statute. In some jurisdictions there are statutes providing for recovery back of illegal taxes paid under protest, and, independently of any statute, there are cases which hold in general terms that taxes paid under protest may be recovered back on showing that they were illegal, even though, at the time of payment, no coercive measures had been taken for collection of the tax, provided the defect was not due to the taxpayer's own neglect; and in some such cases there is language implying that the protest itself, regardless of any legal compulsion or duress, renders the payment involuntary. But the general rule, as laid down in other cases, some of them from the same jurisdictions in which such general statement is made, is that, in the absence of a statute providing for protest, a protest made at the time of payment will not save the payment from being voluntary, in the sense which forbids its recovery back, if it was not made under compulsion or duress, although it has been held that, in case of doubt as to whether payment was voluntary, the protest may be taken into consideration in determining the question. In the absence of statute a tax paid involuntarily or under compulsion or duress may be recovered back, even though no protest was made at the time of payment, and no protest is necessary to warrant recovery where such protest would be useless, or where the taxing officer il-

legally exacts payment of taxes, with notice of, facts rendering the same illegal. Of course, if payment is made under implied duress as well as under protest, the right of recovery is unquestionable."

In § 1272 of the same text, it is said that one of the effects of statutes providing that illegal taxes may be recovered back if paid under protest, is to render such payments involuntary in derogation of the common law rule as to voluntary payments. Other portions of the statute quoted are regulatory merely, providing that the money so paid shall be held in a suspense fund and providing a short rule of limitation of actions.

We assume, but do not decide, that this statute is inapplicable to the case at bar because a question arises as to whether payment of redemption money is the payment of taxes. In Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290, it was suggested that under some circumstances we had made no distinction between paying delinquent taxes and redeeming from outstanding tax sale certificates. However, as above stated, we do not here base our decision upon a view that redemption sale certificates in the hands of others than the State, is payment of taxes.

However, the analogy is sufficiently close to be of some value.

Turning to the same C.J. Text subdivision XIII "Redemption From Tax Sale", we find at § 1786 the following: "Recovery Back of Money Paid. Where taxes are illegally levied or assessed on property and

the land is nevertheless sold for their non-payment and the owner pays the amount necessary to redeem, it is generally held that such payment is voluntary and cannot be recovered back in an action against the municipality or the tax purchaser, even though made under protest. In some cases, however, it is held that the payment is not voluntary and can be recovered back; and some decisions hold that an action may lie against the officer receiving the payment, although not against the city or county; and statutes in some jurisdictions authorize recovery." And in Note 16 to the foregoing text, it is said: "Under Rev.Codes (1905) Sec. 1585, providing that, where taxes have been paid on land not subject to taxation, the money so paid shall be refunded to the person making such payment, his heirs or assigns, the owner of land not subject to taxation, or a person claiming to be such, can recover from the county moneys paid to redeem from a tax sale, even though such tax sale has not been previously adjudged void. Tisdale v. Ward County, 20 N.D. 401, 127 N.W. 512."

Since the object of payment of taxes under protest and the payment of redemption money under protest is the same, namely, to take from the payment its voluntary character, and thus conserve to the party paying, a right to recover back the money, we see no good cause to say that the principles applicable to the payment of taxes under protest do not apply to the payment of redemption money under protest.

The article on "Payment" in 48 C.J. § 67, Note 74, points to the effect of protest on payment, and cites a case, McMillan v. Richards, 9 Cal. 365, 70 Am.Dec. 655, which gives a clear statement of the purpose and effect of protest, as follows: "The object of a protest is to take from the payment its voluntary character, and thus conserve to the party a right of action to recover back the money. It is available only in cases of payment under duress or coercion, or when undue advantage is taken of the party's situation. * * * It does not create a lien upon the money paid, or any legal impediment to its control. It does not impair, in any respect, the operative effect of the payment as a discharge of the demand upon which it is made, so far as such demand is legal. It is notice, only, to the party receiving the payment, that, if the demand is illegal in whole, or in any specified particulars, he may be subjected to an action for the recovery back of the amount to which objection is made; and if action be brought, the protest is only available as evidence of the fact of compulsion." We recognized this in Johnson v. Greiner, 44 N.M. 230, 101 P.2d 183, 184, where we said: "The general rule under such circumstances has been stated to be: 'In the absence of a special statute to the contrary, the fact that an illegal tax is or is not paid under protest is of no importance. If payment of an illegal tax is made under duress, it need not be paid under protest to entitle the taxpayer to recover it back, if he

makes it clear that his payment is involuntary, *and a protest in such a case is important only as evidence that the payment was the effect of the duress.*" 26 R.C.L., page 459, Sec. 414. (Emphasis supplied.)

■ Black's Law Dictionary, 3d Ed. defines protest as follows: "Protest. A formal declaration made by a person interested or concerned in some act about to be done, or already performed, whereby he expresses his dissent or disapproval, or affirms the act against his will. The object of such a declaration is generally to save some right which would be lost to him ·if his implied assent could be made out, or to exonerate himself from some responsibility which would attach to him unless he expressly negatived his assent."

So far as redemption is concerned, "protest" would not affect it one way or another, if the "offer" was otherwise sufficient.

Since the only reason that the deputy county treasurer gave for not accepting the offer was that his principal had advised him not to accept money under protest, as to whether Heron actually produced the money and laid it on the counter does not make any difference.

The Restatement of the Law, Restitution, § 75 (j) defines "protest" as: "A statement by the tax payer to the collecting officer that he makes payment unwillingly because he believes that the tax is invalid."

We do not see how the county treasurer has any business to refuse payment when tendered merely because the taxpayer desires to lay the foundation for recovery back by showing that his payment either of taxes or redemption money was not voluntary.

Since it has been shown that the effect of protest is merely to show that the payment was not voluntary, but was under duress, it becomes material to inquire as to the nature of the duress or compulsion in the case at bar.

■ We are disposed to think that under our holdings in tax cases, the consequences of the failure to redeem are so stringent that they amount to duress or compulsion. See Bowns v. May, 120 N.Y. 357, 24 N.E. 947, holding that under a statute making a tax deed prima facie evidence of the regularity of proceedings and conclusive evidence of some elements thereof, the payment of an invalid assessment under protest to prevent a sale and clouding of title is coercive and is not voluntary so as to preclude recovery.

Cooley on Taxation, 4th Ed., Sec. 1283, citing the above case, says: "A party ought not to be exposed to any more risks of loss in relieving his lands of an apparent cloud upon title than in protecting his goods against an illegal sale."

In Johnson v. Greiner, supra, we said: "Failure of appellee to file his chattel mortgage would expose him to the risk of losing his security under the filing statute. Every minute might prove important. In effect, the county clerk compelled appellee to pay the twenty five cent fee or

risk the loss of his security. It would be difficult to find a clearer case of duress, and we therefore hold that appellee is entitled to maintain this action."

So we say that it would be difficult to find a clearer case of duress than the risks a taxpayer would take of having a tax deed issued conveying his property, which tax deed would be prima facie evidence of regularity of proceedings and conclusive evidence of some elements.

Counsel for the appellee says of the tender by defendant Heron: "However, a sufficient answer to this whole proposition is that a payment under protest is in no wise a redemption from a tax sale. The payment must be without condition." It is a correct statement of the law to say that a tender must be unconditional. Coolcy on Taxation, 4th Ed.; Sec. 1574, says: "The tender must be specific, unconditional and sufficient in amount."

Mr. Cooley cites two cases illustrative of the declaration that the tender must be unconditional. They are Plumsted v. Glos, 263 Ill. 181, 104 N.E. 1009; Halsey v. Blood, 29 Pa. 319. In the first of these cases, the party tendering the money did it upon condition that the party entitled to receive the money, namely, the holder of the tax certificate, would execute a quit claim deed. In the second case cited, the party tendering the money did it upon condition that the party having a right to receive the money would execute an assignment of his title.

It is readily apparent that Heron did not impose any conditions upon his tender and the court so found in its finding of fact No. 17, as follows: "The court finds that the evidence shows that Heron made no demands upon the treasurer as a condition of his proferred payment under protest, other than that the money be accepted as paid under protest." In 62 C.J., Tender, § 45, it is said that the tender must be made unconditionally and follows with the observation: "And a tender accompanied by some condition, performance of which is impossible, or which the tenderer has no right to make," is invalid. It appears in this section that not all conditions imposed will defeat the tender. If the condition interposed is not prejudicial to the creditor or is one on which the debtor has a right to insist, it does not vitiate the tender. For instance, we apprehend that a tender of redemption money upon condition that the county treasurer would issue to the tenderer a redemption certificate would not invalidate the tender, because that is something which the tenderer has a right to receive and which the county treasurer has no right to withhold and which is not prejudicial to him. Also in the same section of the C.J. text it is said: "But the tenderer may upon making a tender accompany it with declaration, not a condition, that it satisfies the debt." There is a plain difference, we think, between a declaration by the tenderer and a condition imposed upon a party to whom the tender is made. In the same text, at § 46,

it is⁹ said: "While, as a general rule, a tender is an admission of an amount due equal to the sum tendered, it has been held that, if the tender is otherwise valid, the fact that it is under protest does not invalidate it."

Further as to conditional tenders, see 26 R.C.L. "Tender" Sec. 21.

We think the following statement from Hunt on Tender points out the difference between "Offer made under protest" which does not effect the tender, and some conditional offers which will invalidate a tender:

"Sec. 243. Offer under protest.—There are decisions holding that a tender under protest, reserving the right to dispute the amount due, if it does not impose any conditions on the creditor, is good. As when the mortgagee is in possession and the mortgagor makes a tender of the amount claimed to be due, and at the same time reserving the right to review their account. So, when the tender was in this form: 'If you insist upon being paid the amount demanded before satisfactory explanations have been given, our clerk will hand you a checque this morning for the amount (£1,596 3s. 6d.), but you must consider the payment as under protest, and our clients will seek to recover back what is overpaid afterwards,' it was held sufficient. Sending a check for the amount of a call, and at the same time protesting against the payment upon certain grounds, and declaring that the money must be held in trust until the cause of complaint is settled, was

held to be a good tender of payment, and that the concluding words imposed no obligation or liability on the directors of the corporation. So, where a debtor claimed certain deductions from the amount claimed by the creditor, which the latter would not allow, it was decided that the use of the term 'under protest' did not vitiate the tender.

"There are cases when a tender under protest would be peculiarly appropriate, and a means to attain justice, as where a party must pay a sum of money by a certain time to save a forfeiture, or to avoid a penalty, and the amount due is peculiarly within the knowledge of the other party, or the sum demanded contains items which he, in good faith, thinks is not a legal claim; and, where a party must pay a sum demanded to get possession of certain property, where it would be a hardship and hazardous to tender a less sum and evoke the aid of the law to obtain the possession."

Defendant Heron imposed no condition on the county treasurer. Heron did not say: "I'll pay you the redemption money if you will do so and so." All he said was, in effect: "I'll pay you because I want to redeem my land, but I want it understood that I am not doing it voluntarily. I am doing it because if I do not, you will make out and deliver a tax deed to the holder of the tax sale certificate, and I will be in a worse position than I am now in, because the deed will carry with it some presumptions difficult to overcome and some which will be conclusive against me. I am under the compulsion of the circumstances and

coercion of the law. I offer to pay you the money to redeem and I do not require anything to be done by you as a condition to receiving it except I want it understood that I am telling you that I am doing it under protest, because I am going to sue to get my money back and I don't want you coming into court saying I paid it voluntarily."

In the case of McMillan v. Richards, supra, it was decided that: "Protest does not prevent payment being discharge of the demand upon which it is made, so far as such demand is legal." So, here, the payment of the money under protest would not keep the money from effectuating a redemption and it would not keep the treasurer from paying the money to the holder of the tax sale certificate. All that the payment under protest would accomplish would be to lay the foundation for Heron's suit to recover back the money.

In Scudder v. Hart, 45 N.M. 76, 110 P. 2d 536, 538, we said: "In Cooley on Taxation, 3rd Ed., page 808, it is said: 'Tender; Attempted Payment. Tender of the tax by anyone who has a right to make payment is effectual to prevent a sale, whether the tender is accepted or not. (Citing authorities) * * * If the owner of land or the holder of a lien thereon applies in good faith to the proper officer for the purpose of ascertaining the amount of the taxes and of paying the same, and is prevented by such officer's mistake, wrong, or fault, such attempt to pay is generally regarded as equivalent to payment.' (Citing more authorities). See Gammill v. Mann, 41 N.M. 552, 72 P.2d 12."

The same learned author in his work on Taxation, 4th Ed., Section 1574, says: "A sufficient tender made at the proper time and by the proper person, will always work a redemption."

In Union Esperanza Mining Co. v. Shandon Mining Co., 18 N.M. 153, 135 P. 78, 80, we recognized this doctrine of liberality in support of the taxpayer's attempts to redeem, as follows: "As a general rule we agree that a statutory right of redemption is to be favorably regarded; but it is a statutory right that is not to be enlarged by judicial interpretation." We went on to say: "We cannot extend the time allowed for redemption, nor waive any condition attached by the statute." In the case at bar, no enlargement of the right to redeem is involved. And so we say that our declaration that "redemption is to be favorably regarded" should apply in favor of the taxpayer.

Being of the opinion that the offer to pay under protest was something which the deputy county treasurer could not control, and that if said deputy county treasurer accepted the money under protest, it would in no wise be prejudicial to him or anyone else, and something which he did not have a right to refuse, we are of the opinion that a redemption was effectuated and that the judgment must be reversed.

The judgment is reversed and the cause remanded with direction that the defendants be permitted to pay, to the Treasurer of Rio Arriba County under protest, such sums of money as are sufficient to effectuate

a redemption of all of said tax certificates outstanding and unredeemed, together with such interest, taxes, costs and penalties as of the date of defendants' offer to redeem, as the law requires to be paid, in order to effectuate redemption, and thereupon that judgment be rendered in favor of the defendants not inconsistent herewith.

It is so ordered.

BRICE, C. J., and SADLER and MABRY, JJ., concur.

ZINN, J., did not participate.