The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant,**

v.

**William H. HILANDER et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 11, 1966.

Rehearing Denied June 24, 1966.

E. Durward Weldon, Georgetown, for appellant.

Gardner L. Turner, Sturgill, Moreland & Turner, Lexington, Henry Prewitt, Paris, Robin Griffin, Miller, Griffin & Marks, Lexington, for appellees.

HILL, Judge.

This is an appeal from an order granting summary judgment in favor of appellees, who were defendants below. The suit was filed by appellant, plaintiff below, to recover annual installments, which matured February 1, 1963, and February 1, 1964, under a note and mortgage dated March 1961 executed by William H. Hilander and his wife, Wilma Hilander, to appellant to secure a $64,000 loan payable in annual payments over a period of twenty-five years.

The Hilanders, being in default two annual installments, conveyed the mortgaged farm to Lexington Mall, Incorporated, on December 6, 1963, and the latter exchanged the same property with Aaron Burchell and wife for other property. These two transactions were made subject to the mortgage. All these parties, being anxious to clear the mortgaged property of debt by paying the entire balance of the mortgage debt, entered into discussions with J. L. Bennett, representative of appellant at Georgetown, Kentucky, intending to ascertain the exact amount necessary to release the mortgage. The note and mortgage did not give appellees (the Hilanders) a right to accelerate the maturity of the debt or to pay more than twenty percent of the balance in any one year. The mortgage note provides:

"Makers reserve the privilege to make, without premium, on any installment payment date, prepayments of principal, subject to the limitation that not more than $12,800 in the aggregate may be prepaid in any single loan year (not calendar year). No partial prepayment shall relieve the makers from

having to pay on the first day of each year, the regular annual installment of principal and interest above specified."

The note and mortgage also provide that upon default by mortgagors in the payment of any annual installment, the mortgagee has an option to accelerate the maturity of the entire balance of principal and interest, or that it may extend or re-extend any principal and interest without impairing its lien.

Appellant contended that inasmuch as the loan was so recently made and was of long-term duration, it did not want to allow mortgagors to pay the entire debt or more than the limit provided in the above quoted provision of the note and mortgage without being compensated by mortgagor for so doing. It was the policy of appellant at the time of these discussions to allow mortgagors to pay off entire balances on such loans, provided they complied with a rule or regulation of appellant requiring a "prepayment penalty" of three percent of the balance, which in the present case amounted to about $1,873. However, neither the note nor mortgage provided for such a penalty. In other words, appellant proposed to charge appellees a penalty of $1,873 for the right to pay the entire indebtedness before maturity. All parties agree appellees did not have a right under the note and mortgage to pay more than $12,800 in any one "loan year."

Through appellant's representative Bennett, efforts were made to persuade appellant to waive this three percent penalty, which were apparently unsuccessful.

Thereafter, and on December 6, 1963, a meeting was held in Lexington, Kentucky, at which all appellees and their attorneys were present, as well as Mr. Bennett representing appellant. After some discussion, one of the attorneys made a telephone call to the home office of appellant admittedly in order to seek a waiver of the penalty. It is apparent that Bennett had declined to

waive the penalty or to accept payment of the debt and interest without the penalty. Otherwise, there would have been no occasion for the telephone call.

The telephone call was made by Henry C. Prewitt, attorney for the Hilanders, to the home office of appellant in New York City where Harold W. Anway (the proper authority) and his assistant, Ralph W. Shaw, on an extension, spoke for appellant.

Prewitt states Anway declined to waive the three percent penalty, whereupon he (Prewitt) consented to pay the penalty but desired to pay it by separate check and signify his involuntariness by showing on the check it was being paid "under protest." Prewitt stated Anway responded "that will be all right, give Mr. Bennett the money." Mr. Bennett had stepped into the room during this conversation, and upon the conclusion of the telephone conversation, Prewitt and Bennett went into another room where all the other interested parties and their attorneys were waiting for the result of the call. The two checks were prepared. The check for $1,873, representing three percent penalty, contained a notation "paid under protest." Bennett requested that they be certified and inquired the address to which releases should be mailed.

Shaw did not testify on motion for summary judgment, but Anway gave his affidavit in which he did not specifically deny agreeing to accept payment by two checks as contended by Prewitt. Although Anway did state, "I know that plaintiff expressed no concurrence in accepting payments on a basis which would leave it open to the payer to subject the plaintiff to continued controversy." At most, this is a conclusion and not a denial of Prewitt's evidence. The checks were mailed to appellant's home office, from which they were promptly returned to appellees on account of the notation on the penalty check "paid under protest."

Thereupon appellant elected to sue for the two, past due, annual installments, but not to accelerate the maturity of the entire indebtedness.

Appellees filed answers charging that the appellant authorized the acceptance of the principal, interest, and penalty as tendered; that Bennett had actual and apparent authority to, and did, accept payment as tendered.

After the filing of affidavits on the issues thus presented, the trial court entered summary judgment directing the clerk to pay appellant its entire indebtedness with interest amounting to $69,573.25; but adjudged appellant was not entitled to recover the penalty. To repeat, the complaint only asked for $10,012 with interest. Appellant has at all times since refused to accept the amount so directed to be paid it in the summary judgment.

Appellees contended in the motion for summary judgment that the home office spokesman for appellant unqualifiedly agreed to accept the debt, interest, and penalty, so long as the total of the two checks equaled appellant's demands. Appellant denied it agreed to accept the two checks as tendered. It contends that it refused and returned the two checks because of the notation on the penalty check that it was being "paid under protest." But all parties concede an agreement was reached providing that the Hilanders might precipitate the maturity of the entire debt upon payment of the debt, interest, and three percent penalty. This leads us to the question whether the tender of the two certified checks, one with the notation thereon "paid under protest," was legally sufficient tender to require its acceptance by appellant. Or the converse, whether appellant had a legal right to refuse to accept the check.

■ Ordinarily, a tender may be defined as: "[T]he act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in

satisfaction of such claim or demand, *without any stipulation or condition.*" 86 C.J.S. Tender § 1 p. 558. (Emphasis added.)

Formerly, payment by check was not legal tender. This legal philosophy was timely abandoned in this jurisdiction in Mc-Gregor v. Mills, Ky., 280 S.W.2d 161, 162, 163 (1955), wherein this Court said:

"A tender of the money received was made by certified check at the time Mrs. Mills' reply was filed. This, we believe, was a sufficient tender. It was made timely, and a certified check, while not a legal medium of payment, is a substitute for money which is commonly and generally used in business and commercial transactions; and likewise in legal proceedings and may be considered as so much money. 36 Am.Jur., Money, section 10."

This leads to the narrow inquiry, is a notation "paid under protest" such a condition under the above definition of "tender" as to render the tender ineffective.

It is written in 52 Am.Jur., Tender, section 24, p 232, that:

"A tender is not rendered conditional by reason of the fact that it is made under protest, where no conditions are imposed and it is made involuntarily in that it is made under coercion of law for the purpose of saving the debtor's rights. A tender by the debtor of the amount due on a debt, which requires nothing of the creditor except his acceptance of the money, is not rendered conditional by the debtor's statement that he intends to sue the creditor for damages."

The leading case of Jaynes v. Heron, 46 N.M. 431, 130 P.2d 29, 142 A.L.R. 1191 (1942), commenting on a similar factual situation, followed the rule announced in Am.Jur., supra, in this manner:

"We think the following statement from Hunt on Tender points out the difference between 'Offer made under protest' which does not effect (sic) the tender, and some conditional offers which will invalidate a tender:

'Sec. 243. Offer under protest.— There are decisions holding that a tender under protest, reserving the right to dispute the amount due, if it does not impose any conditions on the creditor, is good. As when the mortgagee is in possession and the mortgagor makes a tender of the amount claimed to be due, and at the same time reserving the right to review their account. So, when the tender was in this form: "If you insist upon being paid the amount demanded before satisfactory explanations have been given, our clerk will hand you a checque (sic) this morning for the amount (£1,596 3s. 6d.), but you must consider the payment as under protest, and our clients will seek to recover back what is overpaid afterwards," it was held sufficient. Sending a check for the amount of a call, and at the same time protesting against the payment upon certain grounds, and declaring that the money must be held in trust until the cause of complaint is settled, was held to be a good tender of payment, and that the concluding words imposed no obligation or liability on the directors of the corporation. So, where a debtor claimed certain deductions from the amount claimed by the creditor, which the latter would not allow, it was decided that the use of the term "under protest" did not vitiate the tender.'
* * *"

"Being of the opinion that the offer to pay under protest was something which the deputy county treasurer could not control, and that if said deputy county treasurer accepted the money under protest, it would in no wise be prejudicial to him or anyone else, and something which he did not have a right to refuse, we are of the opinion that a redemption was effectuated
* * *."

"The judgment is reversed and the cause remanded with direction that the defendants be permitted to pay, to the Treasurer of Rio Arriba County under protest * * *."

The notation "paid under protest" on the certified check for the three percent penalty required by mortgagee did not enlarge or improve the rights of mortgagors or their successors. Neither did such notation require any further act or concession on the part of mortgagee or jeopardize its position. The legal effect of the payment under protest was merely to show that the payment was involuntary and to preserve any right theretofore enjoyed by mortgagors. In this case, mortgagors had no right to complain of the imposition of the penalty. The amount could not have been recovered by them regardless of whether they paid the amount willingly or involuntarily. So long as mortgagors paid the total demands of appellant in accord with the agreement, the latter will not be allowed to refuse acceptance because mortgagors paid involuntarily.

■ We conclude the parties agreed on the amount due for unpaid principal and interest as well as the penalty; that the notation "paid under protest" appearing on the certified check for the penalty did not invalidate the tender; that the appellant was duty bound to accept tender and is now estopped to refuse payment in full.

Appellant is not entitled to interest after the date of tender, but it is entitled to judgment for $1,873 representing the three percent penalty. Appellant should recover the cost of this appeal, but appellees are entitled to recover the cost incurred in the lower court.

The legal propositions above discussed are not specifically discussed by either appellant or appellees.

Appellant contends: (1) this case is not a proper case for the invocation of summary judgment under CR 56.03; (2) that the circuit court erroneously held that plaintiff was not legally entitled to demand and receive from the borrowers a consideration for permitting early payment of the mortgage loan; and (3) the motion of appellee Lexington Mall, Incorporated for summary judgment against plaintiff should in any event have been denied on the grounds its papers demonstrated no ownership in or lien upon the land described in the complaint.

■ Appellant's first argument that this is not a proper case for summary judgment, because there was an issue of a material fact, vanishes in the face of our conclusion that the tender of payment under protest was immaterial, unimportant, and did not enlarge appellees' rights or jeopardize the rights of appellant. It may be said in passing that notwithstanding appellant made the motion for summary judgment, it may in a proper case insist on appeal that there was really an issue of a material fact and therefore was not a proper case for summary judgment. Cf. Watts v. Carrs Fork Coal Co., Ky., 275 S.W.2d 431 (1955).

■ Appellant next takes the position that the trial court erred in adjudging appellant was not legally entitled to collect the penalty. The trial court concluded appellant was estopped to collect the penalty because it had theretofore elected to treat the entire indebtedness as due by threatening foreclosure. This we think was an erroneous conclusion. It is our opinion the imposition of the penalty was reasonable; that appellant agreed to accept the balance due including penalty with "under protest" attached, and having once agreed thereto, it would not be heard to refuse acceptance. It should be noted further in regard to the telephone conference and the agreement, that Mr. Bennett did not deny it was agreed appellant would accept the debt and penalty "under protest," and he was in the room at the time. Furthermore, the fact that the amount was tendered under protest is immaterial.

The final contention of appellant relates to the summary judgment sustaining the motion by Lexington Mall, Incorporated, that it be discharged. No relief was sought against Lexington Mall, Incorporated. Appellant was not prejudiced by this part of the summary judgment.

The judgment appealed from is affirmed in part and reversed in part with directions to enter judgment consistent herewith.