GIZELLA STRULOWITZ AND HERMAN STRULOWITZ, PLAINTIFFS, v. SUSAN B. ANTHONY BUILDING AND LOAN ASSOCIATION, NOW KNOWN AS SUSAN B. ANTHONY SAVINGS AND LOAN ASSOCIATION, A BANKING ASSOCIATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided July 9, 1971.

*Mr. Milton C. Yarrow,* attorney for plaintiffs.

*Miss Jennie E. Precker* for defendant (*Messrs. Precker & Precker,* attorneys; *Mr. Alfred C. Clapp,* of counsel.

HERBERT, J. S. C. On April 6, 1971 plaintiffs brought this action to have the court determine the amount due on a mortgage plaintiffs had given to defendant in 1959 and for cancellation of that mortgage upon payment of the amount so determined. Because a contract had been made to sell the mortgaged premises free and clear of liens, plaintiffs sought interlocutory relief and, after argument on the adjourned return date of an order to show cause, they were

ordered to deposit with the clerk of the court the full amount defendant claimed to be due on the mortgage debt ($5,930.17), and it was further ordered, among other things, that the lien of the mortgage be transferred to the money on deposit and the real estate relieved of the lien.

There has now been a summary hearing to resolve the basic dispute over the amount due from plaintiffs to defendant. The difference between the two positions is small in dollars though important in principle to both plaintiffs and defendant.

It is argued for plaintiffs that they made, on March 10, 1971, a tender of the amount then claimed by defendant to be due and that their tender is entitled to recognition as an act which stopped the running of interest. On January 29, 1971 defendant wrote plaintiffs a letter containing this statement of the mortgage account:

| | |
|---|---:|
| Balance due as of February 1, 1971 | $5,651.88 |
| Interest 2/1/71 | 28.26 |
| Premium for repayment of mortgage | 169.56 |
| | 5,849.70 |
| Interest per diem | .94 |

On March 10, 1971 plaintiffs' attorney wrote to defendant on behalf of his clients. He enclosed a certified check to the order of defendant, but his letter included these paragraphs:

The mortgagors are paying this amount under protest inasmuch as they claim the account has not given them proper credits for tax payments and other charges.

\*    \*    \*    \*    \*    \*    \*    \*

Kindly furnish me with the mortgage properly endorsed for cancellation, together with the bond, insurance policies and pertinent documents you hold in this matter.

On March 12 the solicitor of defendant returned the certified check. Her covering letter read in part:

484

I am returning the check herewith as the association will not accept repayment of a mortgage under protest. In addition thereto, I wish to advise you that the mortgage is in the process of being foreclosed. The mortgagors will have to pay all foreclosure charges.

It may be noted parenthetically that no foreclosure suit had been started at the time, although a complaint was later filed on March 30, 1971. If plaintiffs here had known of that filing they could have sought appropriate relief in the foreclosure action.

At the hearing it was conceded that if there had been no protest registered in the letter which accompanied plaintiffs' certified check, the tender would have been proper and acceptable to defendant. The case gets down to this: Can a mortgagee — specifically a savings and loan association — properly refuse to accept payment of the amount claimed to be due on the mortgage if there is a protest made as to the correctness of the claimed amount at the time the payment is offered? No New Jersey cases dealing with this question have been found. However, decisions in other jurisdictions have taken the position urged by the plaintiffs here: a tender of the amount claimed by the creditor is not made ineffective by being coupled with a protest. *Manning v. Lunn & Thrupp*, 2 *Car. & K.* 13; 175 *Eng. Repr.* 6 (1845); *Scott v. Uxbridge & Rickmansworth Railway Co.*, *L. R.* 1 *C. P.* 596 (1866); *Sweny v. Smith, L. R.* 7 *Eq.* 324 (1869); *Jaynes v. Heron*, 46 *N. M.* 431, 130 *P.* 2d 29, 142 *A. L. R.* 1191 (Sup. Ct. 1942); *Smith-Wogan Hardware & Implement Co. v. Bice*, 34 *Okl.* 294, 125 *P.* 456 (Sup. Ct. 1912).

*Williston* makes this statement:

Moreover, a debtor may, when making an absolute tender, protest that the amount claimed by the creditor and tendered by himself is excessive and thereby indicate that his payment is not "voluntary," thus reserving a right to sue to recover a portion of what he tenders. [6 *Williston On Contracts* (rev. ed 1938), § 1814 at 5145, citing, *inter alia*, *Scott v. Uxbridge* and *Sweny v. Smith, supra.*]

The courts have given no special position to a secured creditor who rejects a tender made under protest. In *Manning v. Lunn & Thrupp, supra,* a landlord was tendered in coin, but under protest, the rent he demanded. He refused to take the money and subsequently asserted a landlord's lien by seizing the tenant's goods. The tenant then sued for damages for the taking. At trial Pollock, C. B., said:

> If a man makes a tender, he cannot do it in such terms as by the taking of the money he causes the other party to make any admission, because, if he does so, it is a conditional tender, and therefore bad. * * *. A tender under protest is just as good as any other tender; as the person tendering merely says thereby, "I do not mean to preclude myself from recovering this money back again, if I can." [175 Eng. Repr. at 7]

There was left to the jury only the question of the tenant's damages for the landlord's taking of the goods.

In *Jaynes v. Heron, supra,* tax liens were involved. There, plaintiff sued to quiet title to lands which he claimed to own by virtue of a tax sale certificate and deed based thereon. Defendants challenged the validity of the certificate and deed on the ground that they had redeemed their lands. They proved that they had offered to pay the county treasurer the amount called for by the certificate, provided the treasurer would accept such payment as made under protest. No other conditions were imposed. However, the treasurer refused to take the offered redemption money subject to the protest, and the land was sold for nonpayment of taxes. The court rejected plaintiff's argument that tender of payment under protest constituted a conditional and therefore ineffective tender, and held that defendants had made a good tender and were entitled to redeem. This observation pertinent to a mortgage debt is in the opinion:

> We think the following statement from Hunt on Tender points out the difference between "Offer made under protest" which does not effect the tender, and some conditional offers which will invalidate a tender:

Sec. 243. Offer under protest. — There are decisions holding that a tender under protest, reserving the right to dispute the amount due, if it does not impose any conditions on the creditor, is good. As when the mortgagee is in possession and the mortgagor makes a tender of the amount claimed to be due, and at the same time reserving the right to review their account. [130 P. 2d at 34, 142 A. L. R. at 1196]

Though the only reason given for rejecting plaintiffs' tender of March 10, 1971 was the protest contained in the letter which accompanied the certified check, defendant now agues that the final paragraph of the letter attached a condition to the offer to pay and made the tender ineffectual. *Noyes v. Wyckoff*, 114 *N. Y.* 204, 21 N. E. 158 (Ct. App. 1889) is cited.

The paragraph in question is not expressed in terms of a demand or condition but reads as follows:

Kindly furnish me with the mortgage properly endorsed for cancellation, together with the bond, insurance policies and pertinent documents you hold in this matter.

That appears to be nothing more than the usual request for a turn-over of papers to wind up formally a mortgage transaction which has been closed by payment of the mortgage in full. However, if the quoted paragraph can be regarded as attaching a condition to the acceptance of the check, then it is my view that the old and strict doctrine stated in *Noyes v. Wyckoff* should not be followed. *Williston* says:

Allowance of a condition in a tender by a mortgagor that a satisfaction piece or discharge be executed involves the same difficulty in theory as a condition of the execution of a receipt on tender of payment of any debt; but it is so vital in the case of a mortgage to have satisfaction entered of record that statutes in many states make a mortgagee liable for damages or a penalty if he refuses to execute a release, and though many, if not most of these statutes do not in terms require concurrent performance, it is not surprising that most courts hold that a tender by the mortgagor is valid though conditional on receiving a release. [6 *Williston on Contracts*, § 1815, Cum. Supp. for 1970, at 97]

Also see, Annotation, 93 *A. L. R.* 12, at 74 *et seq.*

■ I conclude that plaintiffs made a valid tender on March 10, 1971 and that the rejection of March 12, 1971 was not justified. It follows that plaintiffs are obliged to pay no more than the amount tendered, namely $5,878.84. *Shields v. Lozear*, 22 *N. J. Eq.* 447 (Ch. 1871), aff'd 23 *N. J. Eq.* 509 (E. & A. 1872). In reaching this result I have considered the argument that defendant, being a savings and loan association operated for the benefit of its members and subject to the regulation of the Department of Banking, is entitled to special consideration. I see no merit in those arguments.

It remains to consider the protest of plaintiffs and their contentions that they did not really owe $5,878.84 on March 10, 1971. Plaintiffs object to a prepayment fee. They also object that certain tax moneys were advanced by defendant prior to the due date and then added to the amount of the mortgage debt, thus resulting in some interest charges which plaintiffs say were not proper.

■ The mortgage is dated July 10, 1959. There is no provision that final payment shall be made on a specified date. However, the stipulated monthly installments of $302.78 were calculated on a ten-year basis; so plaintiffs contend the period in which a charge was required, "equivalent to six months interest" on any balance due at the time of prepayment, has already run out. Plaintiffs' argument fails to recognize that the parties, in effect, extended the ten-year estimated life of the mortgage. Defendant's ledger sheet shows that plaintiffs paid $273.32 each month for several years instead of $302.78. As the tax bill increased, plaintiffs did not pay the higher taxes directly, but they were paid by defendant and added to the amount of the mortgage. These two factors explain, or largely explain, why a mortgage of 1969, calculated then to have a ten-year life, was still unpaid in 1971 to the extent of approximately $5,600. On March 10, 1971 plaintiffs were bound by the prepayment clause of the mortgage and subject to a charge of six months'

interest at the contract rate of 6% on the balance of principal then due. Defendant's statement to plaintiffs dated January 29, 1971 included a prepayment charge of $169.56. That was calculated on the then balance of principal and interest, although the language of the mortgage provides for a charge on principal only. The correct amount is $167.87.

Plaintiffs complain further that defendant on six occasions paid half a year's taxes, then added the advances for taxes to the mortgage debt and began to charge interest on amounts so advanced. This, they say, subjected them to interest on tax instalments that were not due until three months later. The grand total of the six items is $5,558.93. If half of that amount, or $2,779.46, was paid three months earlier than necessary, the resulting interest charge to plaintiffs by defendant was by my calculation $41.89, an amount plaintiffs would have avoided if defendant had made all of its tax advances quarterly. The amount is small, but plaintiffs press the point and as I can see no warrant in the tax clauses of the mortgage for prepayment by the mortgagee, plaintiffs will be allowed a credit of $41.89.

Defendant's ledger sheet states the balance of principal and interest for March 1, 1971 at $5,680.14 and interest for the month of March at $28.40. Adding $9.40 for ten days' interest to $5,680.14 produces $5,689.54. Then adding the prepayment charge of $167.87 and subtracting the credit of $41.89 gives a final result of $5,815.52, the amount required to satisfy the mortgage on the date the tender under protest was made.

The amount held by the clerk is $5,930.17. Plaintiffs are entitled to the difference between that sum and $5,815.52. They are also entitled to the costs of this action. *Lozear v. Shields,* 23 *N. J. Eq.* 509, 512 (E. & A. 1872). The taxed costs should be paid to them out of the deposit. The balance, subject to the clerk's charges, will then be paid over to defendant.