Sandra FAULKNER, Movant,

v.

David W. SMITH and Kentucky Farm Bureau Mutual Insurance Co., Respondents.

David W. SMITH and Kentucky Farm Bureau Mutual Insurance Co., Cross/Movants,

v.

Sandra FAULKNER, Cross/Respondent.

Nos. 87–SC–105–DG, 87–SC–261–DG.

Supreme Court of Kentucky.

Jan. 21, 1988.

As Corrected Jan. 21, 1988.

Rehearing Denied April 28, 1988.

T. Bruce Bell, Robert H. Measle, Fowler, Measle & Bell, Lexington, for David W. Smith and Kentucky State Farm Bureau Mut. Ins. Co.

William K. Moore, Midway, for Sandra Faulkner.

STEPHENS, Chief Justice.

On October 19, 1983, Faulkner and Smith had an automobile accident. Smith's insurance policy with Farm Bureau had a bodily injury liability limit of $25,000 per person. Following a March 29, 1985 jury verdict in favor of Faulkner, judgment was entered in Woodford Circuit Court on April 5, 1985 for $383,157.

On April 5, counsel for Smith and Farm Bureau sent Faulkner's counsel a letter offering to pay her $25,000, represented as the limits of the policy, if she would accept that as the maximum coverage available under the policy. No check, draft or other form of payment accompanied the letter. Faulkner's counsel responded by a letter on April 8, 1985, expressing a willingness instead to enter a notice of partial satisfac-

tion or an agreed order noting satisfaction to the extent of funds received.

Without responding to the April 8, 1985 letter, Farm Bureau moved the trial court on April 15, 1985 to enter an order relieving it of any further liability on the judgment upon payment into court of $25,000 plus court costs. Again, no form of payment accompanied this motion. After a hearing, the trial court granted Farm Bureau's motion and entered its order on July 1, 1985. Farm Bureau then paid $25,000 to the Woodford Circuit Clerk on July 5, 1985.

Although the question in this proceeding has been what, if any, post-judgment interest is owed by Farm Bureau to Faulkner, the Woodford Circuit Court perceived no need to address this question, reasoning that Farm Bureau did all it could to tender its limits immediately after trial.

The Court of Appeals decided that the language of the policy required post-judgment interest to be paid on the *entire judgment* rather than on just the insurer's liability limits. The Court of Appeals concluded that this is the majority and modern rule, and that it should be adopted in Kentucky because of the insurer's (1) control over the language of the policy, (2) control over the litigation and settlement negotiations, and (3) ability to escape further interest liability by paying or tendering its part of the judgment into court.

The Court of Appeals also held that Farm Bureau's letter of April 5 failed to comply with the policy language regarding a tender that stops the running of its interest obligation, holding that "[t]ender to be accomplished requires not just the offer of payment, but the actual production or delivery of a tangible form of payment such as draft, check, cash, or otherwise." Nevertheless, they decided "the motion or offer of payment of its limits into court made by the company on April 15, 1985, satisfied all of the policy requirements of paying, tendering, or depositing in court the limit of its liability."

The issue to be decided by this appeal is whether the post-judgment interest clause found in Smith's contract with Farm Bureau requires the company to pay interest on the entire judgment, regardless of policy limits, until the amount is paid. We hold that it does not, and accordingly reverse the decision of the Court of Appeals.

Faulkner contends the Court of Appeals was correct in deciding the interest clause in Smith's contract required payment of interest upon the entire amount of the judgment, though he disagrees with that court's determination that the interest was to stop being calculated on April 15, 1985. Conversely, Kentucky Farm Bureau maintains the Court of Appeals was in error to extend liability for interest to the amount of the entire judgment rather than the policy limits of $25,000, and further that the letter of April 5, 1985 was certainly sufficient to satisfy tender and stop the compilation of interest.

Despite Farm Bureau's contentions, we do not find the attempted discharge on April 5 to be adequate satisfaction of its obligations such that interest should cease to accrue. A tender requires more than just an offer; it requires the actual production of the funds which are admitted to be due by draft, check, cash or otherwise. *Mutual Life Ins. Co. v. Hilander*, Ky., 403 S.W.2d 260 (1966). Further, a tender must be without stipulation or condition. *Id.* Correspondence or pleadings offering to pay $25,000 conditioned upon an agreement that such payment would fully discharge the insurer's liability under the policy was not legal tender. At no time did Farm Bureau tender its complete obligations to Faulkner. On July 5, a check for $25,000 was deposited pursuant to the granting of Farm Bureau's April 15, 1985 motion. However, no matter how the interest clause is interpreted, some interest and costs were also due and remained unpaid at that time.

The first tender of payment to satisfy Farm Bureau's interest obligation occurred after the Court of Appeals' decision, when Farm Bureau deposited interest computed until the time of payment in conformity with its ruling. Nevertheless, this sum can only serve to discharge Farm Bureau's interest obligation if the Court of Appeals' opinion was correct.

The primary issue that must be resolved in this case is whether Farm Bureau's policy with its insured, Smith, required the insurer to pay interest on the entire judgment, or only on the portion of the judgment covered by its policy. The key to this question lies in the policy language. The insured has bought protection:

"II. To pay, in addition to the applicable limits of liability:

A. all expenses incurred by the Company; all costs taxed against the insured in any such suit and *all interest accruing after entry of judgment* until the Company has paid, tendered or deposited in Court such part of such judgement *as does not exceed the limit of Company's liability thereon.*" (emphasis added).

Although it is true that Farm Bureau had full control over the drafting of the contract, and it is well-settled law in Kentucky that ambiguities are to be resolved in favor of the insured, *Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984), such resolutions should never be carried to absurd extremes.

The contractual limit of Farm Bureau's liability under the clear terms of the policy, as stated, is a maximum of $25,000. As noted, *supra,* section IIA of the policy also requires the company to pay (in addition to the limit of liability) "... all interest accruing after entry of judgment ... as does not exceed the limit of Company's liability thereon."

It is clear that the limit of the interest payment applies to the "limit of the Company's liability [under the policy]." The obligation to pay interest refers to the *liability* of the company under the policy: *viz,* the liability coverage. It is not logical that Farm Bureau ever agreed to pay interest on a money obligation it did not owe. The interest obligation of Farm Bureau—under the terms of the policy—is limited to the unpaid policy liability coverage—$25,000. Since Farm Bureau failed to pay the full extent of its obligations promptly, interest should have been calculated. However, such interest could logically only be calculated on the extent of Farm Bureau's contractual obligations.

Thus, we hold that the post-judgment interest clause contained in Smith's insurance contract obligates Farm Bureau to pay interest on the limits of its policy, $25,000, until its obligations have been tendered or deposited into court.

The decision of the Court of Appeals is reversed.

GANT, STEPHENSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents without opinion.

LEIBSON, J., files a dissenting opinion in which LAMBERT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion disregards the general rule found in cases and materials on insurance law on the subject of the standard interest clause (*See* Long, *The Law of Liability Insurance,* Ch. 9, "Payment of Interest by Insurer," and cases cited therein) without discussion or citation of authority to the contrary.

Farm Bureau's insurance policy included both bodily injury liability coverage limited to $25,000 and the obligation to pay "all interest accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgement as does not exceed the limit of Company's liability thereon."

This is an obligation "to pay" supplementing the policy limits; it is "in addition to the applicable limits of liability" and extends to "*all* interest accruing after entry of judgment." Such language is all inclusive and not ambiguous:

"This provision, in unambiguous language, requires the insurer to pay interest on the entire amount of damages until it either pays the amount of its liability under the policy limits or pays such amount into court. The agreement to pay interest is by its nature an undertaking to pay a sum over and above the policy limits.

... The interest referred to is the interest accruing on the judgment. Inter-

est accrual is not limited to a part of the judgment, hence, there can be no doubt that the word 'all' specifically refers to interest accruing on the entire amount of the judgment." *Id.,* Sec. 9.01.

The policy is drafted in its entirety by the insurance company. It is a contract of adhesion and therefore the insurer should be held strictly accountable for its terms.

If we were to assume that it is ambiguous (which it is not), then the policy should be construed to resolve any doubts in favor of the insured. *Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984). While the Majority Opinion recognizes this principle, it resolves all doubt in favor of the insurer. The Majority Opinion does the converse of what the rule of construction requires.

The Court of Appeals' Opinion, which we reverse, states sound reasons why an insurance contract written as was this one should be viewed as reasonable rather than as an absurdity as we mistakenly call it. As stated in *Security Ins. Co. of Hartford v. Houser,* 552 P.2d 308, 310 (Colo.1976), quoted in the Court of Appeals' Opinion:

"[W]e must not ignore the purpose of the standard interest clause. The insurer controls any litigation from which liability might ensue and further controls settlement negotiations. Thus, the accrual of interest may be attributable to the insurer's decision to contest a judgment...."

As stated in *Long, supra:*

"It is logical and reasonable to construe the words 'all interest' as relating to interest accruing on the entire amount of the judgment. The provision for payment of 'all interest' recognizes that the insurer controls all litigation based on claims covered by the policy, even in the matter of appeals from a judgment. Payment of all interest is one of the expected costs of litigation. The provision affords the insured protection against consequences of delays on the part of the insurer in paying the amount of the policy limits when a judgment exceeds such limits." *Long, supra* at Sec. 9.01, 9–2.

If the insurer does not intend to cover all interest on a judgment, but only interest on the portion covered by its policy, it would be relatively simple to revise its policy accordingly. The National Bureau of Casualty Underwriters has so recommended. *See* Ramsey, *Interest on Judgments Under Liability Insurance Policies,* Ins.L.J. # 414 (July 1957), quoted at length in *McPhee v. American Motorists Ins. Co.,* 57 Wis.2d 669, 205 N.W.2d 152, 159 (1973).

The National Bureau of Casualty Underwriters has also removed any possible doubt about the meaning of the standard interest clause as used in this case. A directive issued by the Bureau to member companies reads:

"Several court cases have held that an insurer's obligation to pay interest extends only to that part of the judgment for which the insurer is liable. The respective rating committees have agreed that this is contrary to the intent. As a result, the wording with respect to payment of interest in the new Family Automobile Policy has been restated, in order that it be entirely clear that all interest on the entire amount of any judgment, which accrues after entry of the judgment, is payable by the insurer until the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon.[5] (fn. 5: Letter of National Bureau of Casualty Underwriters dated December 5, 1956, Circular No. 1311 (Automobile Division), and Circular No. 990 (General Liability Division). There has been no [subsequent] change or addition to this [directive] in the time which has elapsed.)"

The statement in the Court of Appeals' Opinion that it appears that a substantial majority of cases and the "modern trend" is to interpret the "standard interest clause" used in this case to require the insurer to pay interest on the entire judgment and not just the portion covered by its applicable limits of liability, significantly understates the overwhelming authority supporting this proposition. *See Annotation,* 76 A.L.R.2d 983 (1959), and later case service.

Thus it would appear that rather than being "illogical" or "absurd" to require the

insurer to pay interest on the entire judgment, the interpretation of the policy language applied in the Court of Appeals falls squarely in the mainstream and should be affirmed. These descriptive adjectives are better suited for our undocumented opinion reversing the Court of Appeals, holding that the insurer need not pay what the policy provides.

Here the insurer, Farm Bureau, has consistently refused to make an unconditional tender in payment of its obligation, including interest, under the policy. At any stage of the proceeding in the trial court, the insurer could have paid or tendered bodily injury coverage plus interest to date, thus relieving itself of further obligation. However, even when the insurer finally tendered payment of the bodily injury coverage, it did so excluding all interest, and only after an order sustaining its motion to "be relieved of any further liability to the Plaintiff (Faulkner) or Defendant (Smith) herein, or to any and all other persons involved in this litigation."

The terms of the order discharge Farm Bureau from any further obligation if plaintiff accepts the tender, thus making the tender one that the plaintiff "would have to refuse in order to preserve his full rights." *River Valley Cartage Co. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101 (1959).

In order to be discharged of the interest obligation under its policy, Farm Bureau was required to tender or pay its bodily injury coverage plus such interest as had accrued on the entire judgment to the date of payment. Such additional amount as Farm Bureau has paid on this account, as with the original payment of $25,000, under the general rule regarding payment of interest (45 Am.Jur.2d *Interest and Usury* § 99) is simply a credit towards the total for payment of the two obligations in the policy, bodily injury coverage and interest.

LAMBERT, J., joins in this dissent.