# RUFUS W. DAVIS vs. ALLSTATE INSURANCE COMPANY & another.[1]

Suffolk. January 11, 2001. - May 18, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Motor vehicle insurance, Settlement of claim, Insurer's obligation to defend, Construction of policy. *Contract,* Insurance. *Consumer Protection Act,* Insurance, Unfair or deceptive act.

This court concluded that an insurance company was liable under the express terms of an insurance policy for postjudgment interest on the entire amount of a judgment entered in a personal injury action brought against the company's insured until the company unconditionally "offered to pay" the injured party the limits of the policy, notwithstanding the fact that the policy limits covered only a portion of the judgment. [177-187] SOSMAN, J., dissenting.

This court remanded to the Superior Court the claim of a pedestrian, struck by a motor vehicle insured by the defendant insurance company, that the company violated G. L. c. 93A by delaying in its response to his demand for payment of its policy limits with interest after a judgment against the company's insured had become final. [187-188] SOSMAN, J., concurring in part and dissenting in part.

CIVIL ACTION commenced in the Superior Court Department on June 19, 1996.

A motion for summary judgment was heard by *Linda E. Giles,* J., and entry of final judgment was ordered by *Vieri Volterra,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Owen Gallagher* for the plaintiff.

*Thomas M. Neville* (*Mary Millis* with him) for Allstate Insurance Company.

GREANEY, J. We examine in this case (decided in the Superior Court on a motion for summary judgment and brought here by our granting the plaintiff's application for direct appellate

---

[1]Robert Allard.

review) the obligation of Allstate Insurance Company (Allstate) to pay postjudgment interest on the recovery obtained by the plaintiff, Rufus W. Davis, in his personal injury action against the defendant, Robert Allard. The judgment for Davis embodied the actual damages that had been awarded by the jury together with prejudgment interest on those damages, and it exceeded the limits of coverage available to Allstate's insured. We conclude that Allstate was liable for postjudgment interest until it unconditionally offered to pay the plaintiff the limits of its policy. We also conclude that there must be further proceedings in the Superior Court to decide whether Allstate committed any violations of G. L. c. 93A.

The undisputed material facts and procedural background may be summarized as follows. On March 11, 1982, the plaintiff sustained injuries when a van driven by Allard struck him as he crossed Route 1A in Revere, outside Wonderland Greyhound Park. The van that Allard was operating at the time was owned by Edward Poulin and was insured by Allstate pursuant to the standard Massachusetts automobile insurance policy issued in that year. The policy provided indemnity in the amount of $25,000 for injuries to one person as a result of one accident. The policy contained provisions setting forth Allstate's duty to defend and right to settle, and its obligation to pay supplemental costs (in addition to the policy limits). We shall set forth those provisions in full later in this opinion.

In 1984, the plaintiff commenced an action in the Superior Court against Allard and others[2] to recover for his injuries, and Allstate defended Allard and its insured in the lawsuit. At some time during, or prior to, a pretrial conference on March 8, 1990, Allstate communicated to the plaintiff's attorney an oral offer of the $25,000 policy limits in exchange for the plaintiff's agreement to release Allard from all liability relating to the accident.[3] The plaintiff rejected the offer, and the case went to trial.

___

[2]Allstate's insured, Edward Poulin; Westwood Group (doing business as Wonderland Greyhound Park) (Westwood); the city of Revere; and Trolley's Food and Spirits.

[3]As an initial matter, we reject the plaintiff's claim that whether Allstate extended this pretrial offer to him remains a disputed question of fact. The judge who ruled on the motion had before her unequivocal deposition testimony of the plaintiff's attorney that established the fact that Allstate's at-

On October 4, 1990, a jury returned a verdict in favor of the plaintiff against Allard and one codefendant, Westwood Group (doing business as Wonderland Greyhound Park) (Westwood), in the amount of $224,952.[4] Judgment entered on October 18, 1990, in an amount slightly in excess of $400,000 (the jury's award of damages plus prejudgment interest). On October 20, 1994, the Appeals Court affirmed the judgment against Allard, *Davis* v. *Allard*, 37 Mass. App. Ct. 508 (1994), and Allstate did not seek further appellate review.[5]

On July 31, 1995 (shortly after this court had decided the appeal of Westwood), the plaintiff made a written demand on Allstate for payment of the $25,000 policy limits plus $228,236.29 in postjudgment interest that had accumulated from the date of entry of judgment. Allstate informed the plaintiff that the matter had been forwarded to its New Hampshire office. On February 26, 1996, the plaintiff sent Allstate a written demand, pursuant to G. L. c. 93A, § 9, for payment of the "amount of the underlying judgment of $224,952 [*sic*], plus accrued interest since October 18, 1990." In response, Allstate informed the plaintiff that it was not obligated to pay interest that accrued after the initial offer to settle made by Allstate and rejected by the plaintiff, but that it would pay the plaintiff, as "our final offer," $25,000, plus $18,000 in interest that, according to Allstate's calculations, had accrued up until the pretrial offer of March, 1990. Despite this offer, on April 26, 1996, Allstate sent the plaintiff a check for $25,000 (with no interest included), marked "final settlement of any and all claims arising from bodily

torney had, before trial, offered the limits of Allstate's policy to the plaintiff, on the condition that he agree to release Allard from all liability relating to the accident.

[4]The jury found Allard seventy-eight per cent responsible, Westwood thirteen per cent, Davis nine per cent and found for Revere and Poulin. The case against Trolley's Food and Spirits, a restaurant where Allard had spent time earlier that evening, apparently, was discontinued. *Davis* v. *Allard*, 37 Mass. App. Ct. 508, 510 (1994).

[5]The Appeals Court reversed the plaintiff's judgment against Westwood, and remanded the case for a new trial. *Davis* v. *Allard*, 37 Mass. App. Ct. 508, 514-515 (1994) (plaintiff's second theory of Westwood's liability not tenable, and unclear which theory had been basis of jury's verdict). We granted Westwood's application for further appellate review, and, on July 14, 1995, reversed the judgment against Westwood and ordered entry of judgment in its favor. *Davis* v. *Westwood Group*, 420 Mass. 739, 748 (1995).

injury caused by [the accident]." The plaintiff did not indorse or negotiate this check. It was not until July 1, 1996, approximately two weeks after the plaintiff filed this action against Allstate, that Allstate issued an unconditional draft in the amount of $25,000 to the plaintiff.

The plaintiff's multi-count complaint sought, insofar as relevant here, a declaratory judgment under G. L. c. 231A that Allstate was liable for the postjudgment interest under the terms of its policy and by reason of G. L. c. 175, § 113A,[6] and a determination that Allstate had violated G. L. c. 93A by its insistence on conditioning payment of the policy limits on a release of the plaintiff's claims. The judge entered summary judgment for Allstate. The judge concluded that (1) under the express terms of the policy, Allstate had no duty to pay post-judgment interest that accrued after its conditional pretrial settlement offer of the policy limits; (2) G. L. c. 175, § 113A, requires written notice only when an insurer eliminates or reduces coverage provided by a policy, and does not apply to settlement offers; and, (3) under *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 504 (1998), an insurer does not violate G. L. c. 93A when it conditions payment of policy limits on a release by the claimant, even when, as in this case, liability is undisputed and damages clearly exceed the available insurance.

1. The plaintiff's argument, in substance, is that Allstate is liable for postjudgment interest on the judgment, computed from the time of entry of judgment in October, 1990, until the time that Allstate tendered the unconditional payment of the policy limits of $25,000, in July, 1996. He asserts that an offer to pay must be in writing and must be made after a judgment is entered to toll the accrual of the postjudgment interest that Allstate was obligated to pay. Allstate argues (and the judge agreed) that Allstate offered, and paid, the plaintiff all that was due him

---

[6]General Laws 175, § 113A, states in relevant part: "In the event a company . . . eliminates or reduces certain coverages, conditions, or definitions in such policies issued under this section, the company must attach to each such policy a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reductions or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions and eliminations."

because, under the terms of its policy, Allstate was not required to pay postjudgment interest after its initial prejudgment offer of the policy limits, notwithstanding the fact that Allstate's offer was expressly made conditional on a release by the plaintiff of his claims.[7]

Neither the plaintiff nor Allstate has furnished the correct analysis. The judge correctly determined, and the plaintiff does not now persuasively argue otherwise, that there is nothing in G. L. c. 175, § 113A, that required Allstate's settlement offer to be in writing. Section 113A does require that reductions or eliminations in coverage to a motor vehicle liability policy be memorialized in a printed notice attached to each policy. There is a clear difference, however, between a reduction of the coverage provided by a policy and an offer to settle a claim that is covered by the policy. As the judge correctly noted, "The former alters the insurance contract; the latter operates within it." In addition, nothing in the terms of the policy require that an offer to settle be in writing. The plaintiff points to the policy provision entitled "Our Agreement," which specifies that "[o]ral promises or statements made by you or our agent are not part of this policy." This provision, however, is comparable in substance and intent to G. L. c. 175, § 113A, and cannot fairly be interpreted to require that every offer to settle be made in writing.[8]

Allstate's reasoning, on the other hand, is also inaccurate.

---

[7]The relevant policy provisions read as follows:

"2. Our Duty To Defend You And Our Right To Settle. We have the right and duty to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We will defend the lawsuit even if it is without merit. We have the right to settle any claim or lawsuit as we see fit. Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy. If any person covered under this policy settles a claim without our consent, we will not be bound by that settlement.

"3. Additional Costs We Will Pay. We will pay, in addition to the limits shown for Compulsory and Optional Bodily Injury To Others . . . [i]nterest that accrues after judgment is entered in any suit we defend. We will not pay interest that accrues after we have offered to pay up to the limits you selected."

[8]Neither was there any express requirement in the terms of the policy that Allstate's offer to pay the policy limits be made postjudgment. An insurer that makes an unconditional prejudgment offer to pay the policy limits, however, in certain circumstances, may risk violating the duty it owes to its insured to

Allstate asserts that our decision in *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, *supra*, controls this case. In *Lazaris*, we held that, in settlement discussions, an insurer may condition payment of the policy limits on the plaintiff's execution of a release, even when liability is reasonably clear and damages exceed the limits of the policy.[9] *Id.* at 505-506. Allstate reasons that its pretrial offer to pay the plaintiff the policy limits, conditioned on the plaintiff's release of all claims against its insured and Allard, constituted a valid offer under *Lazaris*, which, when rejected by the plaintiff, extinguished Allstate's liability for postjudgment interest. The *Lazaris* decision, however, dealt solely with a pretrial settlement offer, specifically, whether an insurance company violates G. L. c. 176D, § 3 (9) (*f*), and G. L. c. 93A by insisting that a claimant release all claims against its insured before it pays a claim. See *id.* at 502-503. *Lazaris* is not dispositive of the issue whether a pretrial offer to settle terminates an insurer's contractual obligation to pay postjudgment interest.

The correct analysis is based in the terms of Allstate's policy with its insured. We interpret these terms according to the "fair meaning of the language used, as applied to the subject matter." *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984), quoting *Sav-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971). The relevant policy terms are provisions 2 and 3 of the general provisions, set forth at note 7, *supra*. Fairly interpreted, these provisions together authorized and obligated Allstate, in this case, to:

> (1) defend any lawsuit brought against its insured within the policy's coverage "even if [the lawsuit] is without merit";

attempt to settle a claim. See *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 506 (1998).

[9]Our decision in *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, *supra* at 504, overruled an earlier decision of the Appeals Court, *Thaler* v. *American Ins. Co.*, 34 Mass. App. Ct. 639 (1993), which had held that, in circumstances when liability is undisputed and damages clearly exceed the policy limits, it is an unfair settlement practice under G. L. c. 176D, § 3 (9) (*f*), for an insurer to insist on a release as a condition of the payment of the policy limits. *Id.* at 642-643.

(2) settle any claim or lawsuit as it saw fit;

(3) terminate its duty to settle or defend by paying the claimant the maximum limits of coverage; and

(4) pay postjudgment interest until it offers to pay the limits of coverage.

The policy allowed Allstate, before trial, to attempt to settle the plaintiff's claim for the policy limits in exchange for a release by him of its insured and Allard. See *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, *supra* at 506. The plaintiff's refusal of Allstate's settlement offer required Allstate to defend its insured and Allard at trial. See *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154, 158 (1992).

When the plaintiff prevailed and judgment entered, Allstate's obligations changed. It no longer was required to "defend" the action, namely, pursue an appeal, "even if [the action] [was] without merit." The action now had merit based on the jury's verdict establishing substantial fault on Allard's part and liquidating a large amount of damages that were incorporated, together with prejudgment interest, in a judgment. The plaintiff then became a judgment creditor, and he was entitled to have the "insurance money [in Allstate's policy] applied to the satisfaction of the judgment." G. L. c. 175, § 113.

Allstate's decision whether to appeal the judgment was governed by the established rule that an insurer's duty to defend generally encompasses an obligation to appeal from an adverse judgment against its insured, but only if reasonable grounds exist to believe that the insured's interest might be served by the appeal. See *Aetna Cas. & Sur. Co.* v. *Sullivan*, *supra* at 157 n.3; *Chrestman* v. *United States Fid. & Guar. Co.*, 511 F.2d 129, 130 (5th Cir. 1975); *Truck Ins. Exch. of Farmers Ins. Group* v. *Century Indem. Co.*, 76 Wash. App. 527, 533 (1995); *Aetna Ins. Co.* v. *Borrell-Bigby Elec. Co.*, 541 So. 2d 139, 141 (Fla. Dist. Ct. App. 1989); 7C J.A. Appleman, Insurance Law and Practice § 4688, at 200-201 (rev. 1979) (insurer "owes a duty to appeal in all instances where it appears the substantial interests of the insured may be served"); 14 G. Couch, Insurance § 200.48, at 220-118 (3d ed. 1999) ("insurer's covenant to defend embraces

the duty to prosecute an appeal from a judgment against an insured where there are reasonable grounds for appeal").

At this point, Allstate, under the express provisions of the policy, could either terminate all its responsibility to its insured and Allard by paying the plaintiff the policy limits, or it could pursue an appeal, knowing that it would be required to pay postjudgment interest until such time as it had, under the supplemental payments provision of the policy, "offered to pay [the plaintiff] up to the limits of coverage." If Allstate chose to appeal, as it did, it could still, in order to fulfil its continuing duty to its insured, have attempted to settle, conditioning payment of the $25,000 on the plaintiff's release of Allard or on the execution of some other suitable document acknowledging that Allard could no longer be pursued on any execution issued on the judgment.

Allstate did not make an unconditional offer to pay, and, consequently, by not doing so, and by continuing to control the litigation by pursuing an appeal, Allstate was responsible for the payment of postjudgment interest until such time as the terms of its policy were satisfied. The clear majority of courts, interpreting a standard interest clause in a motor vehicle liability insurance policy, have held insurers liable for postjudgment interest on the entire amount of the judgment, notwithstanding the fact that the policy limits may cover only a portion of the judgment. The United States Court of Appeals for the First Circuit, in *Fratus* v. *Republic W. Ins. Co.*, 147 F.3d 25, 29 (1st Cir. 1998), stated the majority view as follows:

> "It may, at first, seem shocking to impose this immense obligation on [the insurer] for a failure to deliver a relatively small sum to the plaintiffs. Yet, the clear majority of modern courts that have interpreted a standard interest clause under similar circumstances have concluded that the policies mean what they say. . . .
>
> "[Other] opinions not only apply the straightforward terms of the contracts, but produce sound policy. Compelling the insurer to pay all of the interest which accrues pending appeal protects the insureds, who may wish to pay the portion of the judgment in excess of policy limits

and stop the tolling of interest, but whose lack of control over the litigation prevents them from doing so. . . . The rule also serves to protect plaintiffs from unreasonable delay on the part of insurers, or, as in this case, compensate them for such delays. The rule does not impose an unfair burden on insurers because they remain in control of both the tolling of interest and the litigation, and can fairly be expected to understand how the majority of jurisdictions interpret standard interest clauses." (Citations omitted.)

See *Safeway Ins. Co.* v. *Amerisure Ins. Co.*, 707 So. 2d 218, 222-223 (Ala. 1997), and cases cited; *Security Ins. Co.* v. *Houser*, 191 Colo. 189, 192 (1976), quoting *McPhee* v. *American Motorists Ins. Co.*, 57 Wis. 2d 669, 680 (1973) ("it is reasonable to impose the entire expense of accrued interest upon the insurer in view of the company's right to control the conduct of the suit and its power to escape liability for interest through the payment or tendering of its part of the judgment into the court"); *River Valley Cartage Co.* v. *Hawkeye-Security Ins. Co.*, 17 Ill. 2d 242, 245-246 (1959); *Powell* v. *T.A. & C. Taxi*, 104 N.H. 428, 431-432 (1963). Authoritative commentators on insurance law are also in accord. See 8A J.A. Appleman & J. Appleman, Insurance Law and Practice § 4894.25, at 78-79 (rev. 1981) (that insurer should bear burden of all postjudgment interest is "the only fair result, inasmuch as the insurer has control of the litigation, and can make its election to appeal irrespective of the insured's desires in the matter"); 12 G. Couch, Insurance § 170-43, at 170-59 — 170-60 (3d ed. 1998) ("courts . . . reason that where the insurer is in control of all litigation determining the liability of the insured and may stop the running of any interest against it by tendering, upon an adverse judgment, merely the amount for which it is liable under the policy, the insurer has in effect agreed, if it fails to make a timely tender, to pay all interest on the entire judgment in return for the surrender by the insured of his or her rights to effect a settlement").[10]

---

[10]A minority of jurisdictions follow the rule that the amount of postjudgment interest for which the insurer is liable is limited to interest on the sum of its total liability as designated by the policy limits. See, e.g., *Faulkner* v. *Smith*, 747 S.W.2d 592, 594 (Ky. 1988) ("not logical that [insurer] ever agreed to pay interest on a money obligation it did not owe"); *Shnarch* v. *Empire Mut. Ins. Co.*, 144 A.D.2d 795, 796 (N.Y. 1988) (long-standing

The obligation described continued until such a time as All-state, according to the policy's express language, "offered to pay" the policy limits to the plaintiff. Allstate's original conditional pretrial settlement offer did not constitute such an "offer to pay." In that proposal, Allstate did not offer to pay the plaintiff its policy limits, but instead offered him something substantially less, namely, payment of the policy limits in exchange for the plaintiff's release of claims that appeared to have merit both in terms of liability and damages.

Because the relevant policy language refers to an "offer to pay" rather than an "offer to settle," and makes no provision for the imposition of conditions on the offer to pay, Allstate was required to make an unconditional offer to pay the policy limits in order to terminate its express obligation to pay postjudgment interest. See *Safeway Ins. Co.* v. *Amerisure Ins. Co., supra* at 222-223 (prejudgment and postjudgment conditional offers did not terminate insurer's liability for postjudgment interest); *Southern Gen. Ins. Co.* v. *Ross*, 227 Ga. App. 191, 193 (1997) (conditional "tender" letter ineffective to stop accrual of post-judgment interest under policy because insurer not allowed to condition partial payment upon forgiveness of entire debt); *Sours* v. *Russell*, 25 Kan. App. 2d 620, 630 (1998); *Cochran* v. *Auto Club Ins. Ass'n*, 169 Mich. App. 199, 203 (1988) (insurer's offer to pay policy limits, conditioned on full release of defendants, insufficient to toll running of postjudgment interest); *Balder* v. *Haley*, 441 N.W.2d 539, 542 (Minn. Ct. App. 1989); *Bossert* v. *Douglas*, 557 P.2d 1164, 1167 (Okla. Ct. App. 1976); 8A J.A. Appleman & J. Appleman, Insurance Law and Practice, *supra* at § 4894.25, at 98; 12 G. Couch, Insurance, *supra* at § 170-53, at 170-67 — 170-68. Cf. *Insurance Co. of Pa.* v. *Giles*, 196 Ga. App. 271, 273-274 (1990) (plaintiffs waived postjudgment interest obligation when insurer unconditionally offered to pay policy limits and delay in payment was due solely to plaintiffs' desire to ascertain amounts of respective judgments against multiple defendants).[11] In this case, compliance occurred

---

interpretation in New York is that insurers are only liable for postjudgment interest on policy limit). Allstate does not argue this view, and, in light of the absence of any limiting policy language, we do not accept it.

[11]The use of the term "offer to pay" in Allstate's policy rather than the

on July 1, 1996, when Allstate finally tendered unconditional payment of the $25,000 to the plaintiff.

Comment on the dissent is now in order. The dissent confuses the term "offer to settle" with the term "offer to pay." These are fundamentally different concepts in insurance law; the former contemplates payment in exchange for a release, the latter encompasses actual payment without a release. The majority rule, stated in both cases and commentary such as Appleman and Couch, set forth above, supports this view, as does the decision in *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 505 (1998) ("There is a difference between making payment on a claim and settling that claim").

term "tender" or "payment" does not affect our reasoning or our conclusion. The interest clauses in the policies dealt with in *Safeway Ins. Co.* v. *Amerisure Ins. Co.*, 707 So. 2d 218, 220 (Ala. 1997); *Sours* v. *Russell*, 25 Kan. App. 2d 620, 629 (1998); and *Insurance Co. of Pa.* v. *Giles*, 196 Ga. App. 271, 273 (1990), used identical "offer to pay" language to that in this policy.

We are aware of appellate decisions in other jurisdictions that, interpreting policies containing "offer to pay" language in a supplemental payments provision, have declined to hold an insurer liable for postjudgment interest after a conditional offer to settle the case for the policy limits was made. Two of these decisions, cited by the dissent to support the proposition that an "offer to pay" need only be conditional, involve factual circumstances not present here, and do not discuss the significance of the "offer to pay" language. See *Overbeek* v. *Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996), cert. denied, 552 U.S. 809 (1997) (when plaintiff appealed from judgment, and "decade of protracted and needless litigation" was due solely to "intransigence of plaintiff's counsel," conditional offers to pay sufficed to toll insurer's liability for postjudgment interest); *Farmers Alliance Mut. Ins. Co.* v. *Bethel*, 812 F.2d 412, 413 (8th Cir. 1987) (multiple prejudgment offers made in good faith and refused through no fault of insurer sufficed to toll insurer's liability for postjudgment interest, when insurer had deposited policy limits with court). We are unpersuaded by the reasoning of another decision, also cited by the dissent, that differentiates between supplemental payments provisions that require "tender" or "payment" and those that require only "offer to pay" to terminate an insurer's liability for postjudgment interest. See *Campbell* v. *Turner*, 744 So. 2d 1261, 1263 (Fla. Dist. Ct. App. 1999). See also *Weimer* v. *Country Mut. Ins. Co.*, 216 Wis. 2d 705, 723-724 (1998) (conditional offer sufficed to terminate insurer's liability to pay postjudgment interest, even though policy language required "tender"). But see *Faulkner* v. *Smith, supra* at 593 (written offer to pay policy limits and payment of policy limits into court, insufficient to toll insurer's liability for postjudgment interest when policy language required actual "tender"); *Calder Race Course, Inc.* v. *Illinois Union Ins. Co.*, 714 F. Supp. 1183, 1187 (S.D. Fla. 1989) (offer to settle insufficient when policy language required insurer to pay postjudgment interest until insurer "paid or tendered or deposited into court" policy limits).

It is true that the interpretation of an insurance contract is dependent on the particular language used in the policy. We are bound, however, to interpret policy language in accordance with the common meaning of the words used, from the viewpoint of a reasonable insured, in order to "best effectuate[] the main manifested design of the [insurer and insured]." *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240, 245 (1986); *James J. Mawn Enters., Inc.* v. *Liquor Liab. Joint Underwriting Ass'n*, 42 Mass. App. Ct. 417, 420 (1997). The dissent fails to follow this general principle. Although a valid "tender," when used in the legal sense, may imply more than a mere offer to pay, see *Mondello* v. *Hanover Trust Co.*, 252 Mass. 563, 567 (1925) (offer to pay is "statement that the party has the money and is ready and willing to pay it"; tender requires "actual production of money"), for our purposes the terms are virtually synonymous. See *Ryder & Brown Co.* v. *E. Lissberger Co.*, 300 Mass. 438, 445 (1938); *Skillings* v. *Collins*, 224 Mass. 275, 277 (1916); *Cumnock* v. *Institution for Sav.*, 142 Mass. 342, 347 (1886) ("The distinction between an unconditional offer to pay a debt, accompanied with a present ability and intention to pay, and a formal tender, is certainly technical, and the tendency of the law undoubtedly is to ignore technicalities which serve no useful purpose"); *New England Power Co.* v. *Riley Stoker Corp.*, 20 Mass. App. Ct. 25, 28 (1985), quoting comment 1 to § 2-503 of the Uniform Commercial Code, 1 U.L.A. (Master ed. 1976) (tender is offer coupled with present ability to fulfil conditions resting on tendering party, followed by actual performance if other party shows himself ready to proceed). Both share the essential characteristic that they be without stipulations or conditions.

More to the point, the dissent's reasoning that an "offer to pay" means only an "offer to settle" does an injustice to the ordinary meaning of those terms. While in insurance parlance, an "offer to pay" may imply an "offer to settle," there is no question that the terms are commonly understood to have distinct meanings. Thus, where Allstate's policy sets forth its obligations to make payments to the insured (e.g., "[w]e will pay three kinds of benefits"; "we will pay reasonable expenses"; or "[a]dditional costs we will pay"), the term "pay"

describes an unconditional tender of money owed. On the other hand, where Allstate's policy refers to a settlement of a claim (e.g., "right to settle" and "duty to settle") the term "settle" implies an offer of payment to the claimant that is expressly conditioned on some type of release for the insured. See *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, *supra*. Indeed, the use in Allstate's policy of both terms in tandem, as in "[o]ur duty to settle or defend ends when we have paid the maximum limits of coverage under this policy," illustrates that settlement and payment contemplate separate actions taken by the insurer, each triggering distinct consequences under the policy to the insured.

In keeping with this distinction, a reasonable insured would understand Allstate's promise to pay postjudgment interest (for the benefit of the insured, who is otherwise obligated to pay postjudgment interest) to terminate only after Allstate had offered to pay, with no conditions attached, the limits of the policy. Allstate's liability to the insured for the payment of postjudgment interest, according to the dissent, would end the first time Allstate offered to settle the case for the policy limits. This interpretation, however, renders Allstate's promise to the insured an empty promise, because, in every case where liability is both reasonably clear and in excess of the policy limits, an insurer like Allstate merely would extend an offer to the claimant to settle a case for the policy limits, thereby automatically shifting the burden of payment of postjudgment interest to the insured. This result would run directly counter to the purpose of the supplemental payments provision, "to protect the insured when the insurer decides to contest liability and a judgment in excess of the policy limits is returned against the insured." 12 G. Couch, Insurance, *supra* at § 170:43, at 170-58. The insured, who, by clear language elsewhere in the policy, has relinquished control over the litigation to the insurer, and who may not wish to appeal, would be obligated to pay the interest that accrues on the judgment while the insurer pursues an appeal.[12]

There is no evidence that the plaintiff acted unfairly or

---

[12]The fact that, in some cases like this one, the insured may not have funds to pay either the amount of judgment in excess of the policy limits or the postjudgment interest has no relevance to the proper analysis of the provision.

unreasonably to prolong litigation (and increase postjudgment interest due him by Allstate); if anything, the record reflects that Allstate pursued an appeal in the hope (a longshot at best) that Westwood might ultimately bear the responsibility to pay. Allstate could have avoided its contractual liability for the interest had Allstate paid the plaintiff the money it owed. The over-all effect of the dissent's interpretation of the supplemental payments provision adds language that is not in the supplemental payments provision of the policy to deny the benefits of Allstate's promise to its insured (which became a promise to the plaintiff by virtue of Allard's assignment of rights to the plaintiff).[13]

2. We conclude that there must be further proceedings on the plaintiff's G. L. c. 93A claim.

In his February 26, 1996, G. L. c. 93A demand letter, the plaintiff asserted that Allstate's delay in responding to his July 31, 1995, demand for the policy limits plus interest, a demand made nine months after the judgment against Allstate's insured had become final, constituted a violation of various provisions of G. L. c. 176D, § 3 (9), and, therefore, a violation of G. L. c. 93A. While there may be some adequate explanation for Allstate's delay, a fact finder must decide whether that delay constituted, in all the circumstances, an unfair or deceptive act or practice.

The other item identified by the plaintiff in his opposition to

---

[13]The dissent's "disturbing ramifications" analysis creates somewhat chimerical problems in an effort to favor insurers in an area that raises problems no different from those insurers face every day. *Post* at 193-195. The requirement that an insurer pay postjudgment interest if an appeal is pursued will require insurers to reevaluate the case in the face of judicial finding of liability. If an appeal lacks merit or is otherwise weak, an insurer will have strong incentive to pay. There is nothing wrong with this. After all, the whole purpose of the postjudgment interest rule and G. L. c. 176D is to require insurers to pay when liability becomes clear and to penalize them when they stonewall and unnecessarily prolong the litigation. An insurer has no obligation to pursue an appeal that has no reasonable likelihood of success in an effort to grind down a successful claimant until a settlement is accepted. If the insurer seeks to pursue an appeal that has merit, it may be able to control its postjudgment interest obligations by paying the policy limits (with accrued interest) into court. We leave the availability of this procedure for another day because it is not involved in this case. We mention it only to suggest that insurers are not in the hapless situation hypothesized by the dissent.

Allstate's summary judgment was that, after Allstate's offer of a proposed compromise, Allstate issued him a check for $25,000, on April 26, 1996, with a restrictive legend indicating that it was a "final settlement of any and all claims arising from" the underlying accident. This event occurred two months after the original letter, and, consequently, cannot be considered a separate item for purposes of G. L. c. 93A liability. See *Clegg* v. *Butler*, 424 Mass. 413, 423 & n.12 (1997); *Bressel* v. *Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993). See also *Spring* v. *Geriatric Auth. of Holyoke*, 394 Mass. 274, 287-289 (1985). Based on what has been said, there is to be a trial on the plaintiff's claim that Allstate violated G. L. c. 93A by unreasonably delaying payment of its policy limits with interest after the judgment became final.

3. Summary judgment is vacated. The case is remanded to the Superior Court for such proceedings on the complaint as may remain in dispute, including determination of the final amount of postjudgment interest owed by Allstate and determination of the G. L. c. 93A claim. When all remaining claims are decided, an appropriate new final judgment is to be entered.

*So ordered.*

SOSMAN, J. (concurring in part and dissenting in part). The court imposes on Allstate Insurance Company (Allstate) an obligation to pay postjudgment interest that is contrary to the express provisions of Allstate's standard automobile insurance policy. In my view, the judge below correctly granted Allstate's motion for summary judgment on the issue of its liability for postjudgment interest. The court's opinion also allows the plaintiff to pursue a G. L. c. 93A claim against Allstate based on its refusal to pay that disputed postjudgment interest. While I agree that the plaintiff should be allowed to proceed on a claim that Allstate's delay in paying the $25,000 policy limit violated G. L. c. 93A, Allstate did not violate G. L. c. 93A merely by litigating the issue of its liability for postjudgment interest.

1. *Interpretation of insurance policy's interest provisions.* Under the terms of its policy, Allstate agreed to pay postjudg-

ment interest in any suit it defended, but that contractual obligation to pay interest would terminate once Allstate "offered to pay up to the limits" of the policy. At issue in this appeal is the meaning of the term "offered" as used in this policy, specifically, whether Allstate's offer to pay the policy limit in exchange for a release of its insured was sufficient to cut off its liability for postjudgment interest.

Courts interpreting policies with language identical to the Allstate policy have concluded that a conditional offer of the policy limit, such as that extended by Allstate, satisfies the policy requirement of an "offer to pay" the policy limit and terminates the insurer's liability for interest. See *Overbeek* v. *Heimbecker*, 101 F.3d 1225, 1227-1228 (7th Cir. 1996) (where interest obligation "ends once the insurance company offers to pay the policy limits," repeated offers to settle for policy limits precluded award of postjudgment interest); *Farmers Alliance Mut. Ins. Co.* v. *Bethel*, 812 F.2d 412 (8th Cir. 1987) (pretrial offers to pay $30,000 in exchange for release of insured satisfied policy requirement of "offer to pay"); *Campbell* v. *Turner*, 744 So. 2d 1261 (Fla. Dist. Ct. App. 1999) (offer of $10,000 policy limit in exchange for release was "offer to pay" that avoided liability for interest).

A contrary result has been reached in two cases. See *Safeway Ins. Co.* v. *Amerisure Ins. Co.*, 707 So. 2d 218 (Ala. 1997); *Sours* v. *Russell*, 25 Kan. App. 2d 620, 629-630 (1998).[1] Both relied on case law interpreting policy language requiring that the policy limit be "paid or tendered or deposited in court" in order to avoid interest. *Safeway Ins. Co.* v. *Amerisure Ins. Co.*, *supra* at 220. *Sours* v. *Russell*, *supra* at 629-630. When the policy language requires the policy limit to be "paid or tendered

---

[1]There are cases where the policy language required an "offer to pay," but the fact pattern at issue involved an actual payment or deposit being made by the insurer. See *Cox* v. *Peerless Ins. Co.*, 774 F. Supp. 83, 87 (D. Conn. 1991); *Boston Old Colony Ins. Co.* v. *Fontenot*, 544 So. 2d 739, 741 (La. Ct. App. 1989); *Fowler* v. *Roberts*, 526 So. 2d 266, 279-281 (La. Ct. App. 1988); *White* v. *Auto Club Inter-Ins. Exch.*, 984 S.W.2d 156, 159 (Mo. Ct. App. 1998); *Sproles* v. *Greene*, 329 N.C. 603, 612-615 (1991). A holding that an actual payment was sufficient to terminate liability for interest does not mean that actual payment was required in order to terminate that liability. Such cases shed no light on whether an offer of the policy limits conditioned on release or full settlement qualifies as an "offer to pay" the policy limits.

or deposited into court" in order to terminate the insurer's liability for interest, a mere settlement offer of the policy limits does not qualify as "tender" or "payment." See *Calder Race Course, Inc.* v. *Illinois Union Ins. Co.*, 714 F. Supp. 1183, 1188-1189 (S.D. Fla. 1989); *Southern Gen. Ins. Co.* v. *Ross*, 227 Ga. App. 191, 193 (1997); *Cochran* v. *Auto Club Ins. Ass'n*, 169 Mich. App. 199, 202-203 (1988); *Balder* v. *Haley*, 441 N.W.2d 539, 542 (Minn. Ct. App. 1989); *Baughn* v. *Busick*, 541 P.2d 873 (Okla. Ct. App. 1975); 12 G. Couch, Insurance § 170.53, at 170-67 — 170-68 (3d ed. 1998); 8A J.A. Appleman & J. Appleman, Insurance Law and Practice § 4894.25, at 98-100 (rev. 1981). But see *Weimer* v. *Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722-725 (1998) (using common meaning of term "tender," as opposed to legal definition, offer of policy limit in full settlement of claim qualified as "tender" that terminated insurer's obligation to pay interest).

However, no such language appears in the present Allstate policy. Here, the obligation to pay interest ended once Allstate "offered to pay up to the limits" of the policy. Allstate did not have to "tender," "pay," or "deposit" the policy limit in order to stop interest from accruing. The contract term "offer to pay" should not be interpreted as the equivalent of "tender," or "payment," or "deposit into court." The term "tender" and the term "pay" have always meant something more than a mere "offer." See *Metropolitan Credit Union* v. *Matthes*, 46 Mass. App. Ct. 326, 333 (1999), quoting *Mondello* v. *Hanover Trust Co.*, 252 Mass. 563, 567 (1925). Cases holding that an offer to pay the policy limit conditioned upon release of the insured qualifies as an "offer" have appropriately distinguished those policies that require an actual tender, payment, or deposit. See *Campbell* v. *Turner, supra* at 1262-1263, citing *Calder Race Course, Inc.* v. *Illinois Union Ins. Co., supra* (adhering "to the distinction between 'offer' and 'tender' ").

When interpreting contract language, we should construe terms in their "usual and ordinary sense." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998), quoting *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 142, 146 (1982). Here, the term "offer to pay" the policy limit should be interpreted with reference to what was typically meant by an

"offer" in the context of dealings with insurance companies in personal injury litigation. By standard custom and usage, an "offer" from an insurer defending its insured under a liability policy was an offer to pay in exchange for a release of its insured — i.e., an offer to pay in full settlement of the underlying claim.[2] Indeed, our decision in *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502 (1998), was premised in part on the fact that an insurer could not make an unconditional offer of the policy limit without risking a claim that it had violated its duty to its own insured. *Id.* at 506. It would be anomalous in the extreme to interpret the term "offer to pay" in a fashion that would, if made, expose an insurer to a claim that it had violated its duty to its insured.[3]

The court's conclusion that "offer" means "unconditional offer" would transform the term "offer" into a requirement of actual payment. See *ante* at 183. An "offer" that has no conditions whatsoever will always be accepted, as there is no reason to reject an offer that demands no concessions in return. In the context of personal injury litigation, an "unconditional offer" will inevitably result in payment, as no plaintiff would ever turn down an offer of money that still left the plaintiff free to pursue all claims against all defendants. Ironically, it is those cases

[2]The policy at issue in this case, and the offer to pay the policy limit in full settlement, long predated *Thaler* v. *American Ins. Co.*, 34 Mass. App. Ct. 639 (1993), which was subsequently overruled by *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502 (1998), and an offer of the policy limit in exchange for a release of the insured has once again become the normal form of "offer" in this context.

[3]On the facts of this case, it may well be that Allstate could have made an unconditional offer postjudgment without violating any duty to its insured. I agree with the court that the appeal of the underlying verdict was "a longshot at best," and the duty to defend does not require insurers to take "longshot" appeals. *Ante* at 187. However, the issue is not whether, at some point in the history of this case, Allstate could have made an unconditional offer to pay without violating its duty to its insured. Rather, the issue is whether, at any point during the history of the case, it did make an "offer to pay up to the limits" of the policy. Nothing in the policy language suggests that the term "offer to pay up to the limits" changes its meaning at different stages of the underlying litigation, and we must therefore give the term a meaning that would include the kind of "offer" that is ordinarily made prior to trial and that, for some cases, will be the only kind of "offer" that an insurer can properly make even after a verdict has been returned.

interpreting policies that terminate interest only when the policy limit has been "paid or tendered or deposited into court" that hold that an unconditional offer is required, reasoning (correctly) that only an unconditional offer is the equivalent of payment, tender, or deposit. See *Calder Race Course* v. *Illinois Union Ins. Co., supra; Southern Gen. Ins. Co.* v. *Ross, supra; Cochran* v. *Auto Club Ins. Ass'n, supra; Balder* v. *Haley, supra; Baughn* v. *Busick, supra.* Here, the court's insistence that Allstate make an "unconditional offer" incorrectly elevates the policy requirement of a mere "offer to pay" into the equivalent of actual payment. The term "offer to pay" the policy limit, as used in this policy, should be given the ordinary, sensible construction that the term had in the insurance field at the time in question, namely, an offer to pay conditioned on settlement of the claim against the insured. The policy requires only an "offer," and nothing in the policy language or in the industry's ordinary practices suggests that this court should insert the word "unconditional" to modify that contract term.[4]

The court reasons that, because the policy terminated interest only on an offer to "pay," as opposed to an offer to "settle," we must conclude that only an unconditional offer will suffice. This analysis overlooks the fact that, under an insurance policy, the only thing that an insurer does for a claimant is to "pay" money, be it in satisfaction of a judgment, partial satisfaction of a judgment, or in settlement of the claim. An "offer to pay" can, and routinely does, occur in the context of settlement, as a settlement with an insurance company can only result in "payment." Nothing about the use of the term "pay" suggests that the "payment" anticipated by the offer can not be a payment in settlement. While quibbling over the ostensible distinction between "offer to pay" and "offer to settle," the majority ignores the fact that what is required is only an "offer," not an actual payment.

---

[4]In practice, an insurance company never makes an "unconditional offer" to pay the policy limit. Plaintiffs make demands for the policy limit, and insurers who do not intend to obtain anything in return simply pay on that demand. There is no "offer" that precedes such a payment, and no purpose would be served by prefacing payment with an "unconditional offer." Interpreting the interest provision as hinging on an "unconditional offer" makes the termination of interest contingent on an event that simply never occurs.

Beyond its erroneous interpretation of these contract terms, the court's analysis has some disturbing ramifications. The court acknowledges that, where an insured has a potentially meritorious appeal, the insurer's duty to defend obligates the insurer to pursue that appeal. And, pending the outcome of such an appeal, an insurer cannot abandon its insured simply by paying the policy limits without obtaining a release of the insured. See *Lazaris* v. *Metropolitan Prop. & Cas. Ins. Co.*, *supra* at 506. Under the court's interpretation, the insurer is penalized (by the obligation to pay interest on the entire judgment) for having honored its duty to defend.[5] Put another way, the court's interpretation provides a strong incentive for an insurer not to pursue an appeal, even if the appeal has a reasonable chance of success and should be undertaken pursuant to the duty to defend the insured. Where, as is often the case, the jury's verdict is vastly in excess of the policy limit, the interest that mounts on the judgment during an appeal will soon eclipse the policy limit.[6] Even with excellent prospects on appeal, it would be better for the insurance company to pay its paltry policy limit, leaving the insured to contend with the remaining massive liability for both interest and principal, rather than take an appeal and risk having to pay all postjudgment interest (as well as the policy limit).[7] Allowing an insurer to terminate its liability for interest upon an offer to settle (which would, if accepted,

---

[5]The duty to defend encompasses a duty to pursue an appeal, and hence the duty to insist on a release of the insured as a condition of payment during the appeal, "if reasonable grounds exist to believe that the insured's interest might be served by the appeal." *Ante* at 180. Where there are such "reasonable grounds" for an appeal, an insurer who pursues an appeal is not "stonewall[ing]" or "unnecessarily prolong[ing] the litigation." *Ante* at 187 n.13. There is no justification for penalizing good faith appeals that are taken to protect insureds. The taking of "an appeal that has no reasonable likelihood of success in an effort to grind down a successful claimant," *id.*, is a violation of G. L. c. 176D, § 3 (9), and, by way of G. L. c. 93A, § 9 (3) and (4), makes the insurer liable for two to three times the underlying judgment plus attorney's fees. There is no need to impose interest as a penalty on insurers for taking good faith (but ultimately unsuccessful) appeals simply to have that penalty available for those who take bad faith appeals.

[6]Here, for example, the interest that accrued during the appeals came to almost ten times the policy limit.

[7]The court suggests, in an oblique fashion, that an insurer "may be able to control its postjudgment interest obligations by paying the policy limits (with accrued interest) into court," but then "leave[s] the availability of this

eliminate the insured's liability for both interest and principal)
does no injustice to insureds. By definition, if the insurer is
willing to pay its policy limit and forgo any appeal as long as
its own insured is released, an appeal that is taken following the
plaintiff's rejection of such an offer is an appeal taken in order
to protect the insured, not to protect the insurer. There is noth-
ing unjust or unreasonable about requiring an insured to pay the
interest that mounts during a good faith appeal that has been
taken solely to protect the insured's interests.

In terminating an insurer's liability for interest on an "offer
to pay," the Massachusetts standard automobile insurance policy
deviated from the interest provision most commonly used, which
terminates liability for interest only when the policy limit is
"paid or tendered or deposited in court."[8] Today, the majority

procedure for another day." *Ante* at 187 n.13. The contract terminates interest
only on an "offer to pay" the policy limit, which the court now construes as
an "unconditional offer" to pay. A deposit into court (which would only be
paid to the plaintiff if the insurer's appeal were unsuccessful) is not an "offer
to pay" and is certainly not an "unconditional offer." The contract here does
not suggest that a deposit of the policy limit into court relieves the insurer of
the obligation to pay interest on the entire judgment if the appeal is
unsuccessful.

Nor is there any authority for permitting such a deposit into court. Deposits
into court may be made pursuant to Mass. R. Civ. P. 67, 365 Mass. 835
(1974), but only with leave of court. Such a deposit is normally not allowed if
the depositor is still contesting liability. See *Tarpey* v. *Crescent Ridge Dairy,
Inc.*, 47 Mass. App. Ct. 380, 393 (1999), citing J.W. Smith & H.B. Zobel,
Rules Practice § 67.2 (1981). Even assuming an insurer were allowed to
make a deposit pending an appeal on the issue of liability, that deposit would
probably not toll the accrual of interest on the judgment. See *O'Malley* v.
*O'Malley*, 419 Mass. 377, 381 n.5 (1995) ("[w]e need not decide whether
rule 67 may be used to stop interest from running on a judgment while the
losing party takes an essentially no-risk appeal . . ."); *Augustine* v. *Rogers*,
47 Mass. App. Ct. 901, 902-903 & n.2 (1999) (declining to address the issue,
but noting that rule 67 itself "makes no provision for interest"). While I wish
that there were some procedural mechanism by which to prevent the adverse
consequences of today's misinterpretation of the standard automobile insur-
ance policy (a policy that governs an enormous number of claims before our
courts), there does not appear to be any such mechanism.

[8]The treatises cited by the court refer to the "paid or tendered or deposited
in court" version as the "standard" interest clause. See 8A J.A. Appleman &
J. Appleman, Insurance Law and Practice § 4894.25, at 82 (rev. 1981 &
Supp. 2000); 12 G. Couch, Insurance § 170.32, at 170-51 (3d ed. 1998). The
"offer to pay" version that we address today is sufficiently rare that it is not
even mentioned in either treatise.

assumes that Massachusetts adopted such different language for no reason, holding that the two distinct versions mean exactly the same thing. Normally, we would attach significance to the parties' choice of words that so pointedly differed from an extant standard model. The wording is markedly different — an "offer" obviously means something other than actual payment — and there is a discernible reason for choosing one version over the other. I believe that we should ascribe meaning to the different language chosen for this insurance policy, and that we should interpret that language in a way that does not encourage insurers, who are willing to part with the policy limit, to abandon their insureds after the jury return a verdict substantially in excess of that policy limit. Today's opinion will certainly reduce defense appeals in personal injury cases, but that reduction comes at the expense of insureds who may have had legitimate, good faith, and meritorious appeals. I therefore dissent.

2. *G. L. c. 93A.* I concur that further proceedings on the plaintiff's claim under G. L. c. 93A are required, as Allstate's delay in responding to the July 31, 1995, demand for the policy limit is potentially a violation of G. L. c. 93A. Once the $224,952 judgment against Allstate's insured became final, Allstate's obligation to pay its policy limit of $25,000 became absolute under G. L. c. 175, § 113. While Allstate's attention may have been focused on the much larger sum of interest then being demanded by the plaintiff, at least $25,000 was undisputably owed by that time. Delay in paying the undisputed portion of its obligation can give rise to liability under G. L. c. 93A, and that aspect of the plaintiff's G. L. c. 93A claim needs to be tried.

However, as I disagree with the court's determination that Allstate is liable for postjudgment interest, I obviously disagree with the proposition that Allstate's failure to pay postjudgment interest could be a violation of G. L. c. 176D, § 3 (9), and thereby a violation of G. L. c. 93A. Beyond the simple disagreement on the merits of the postjudgment interest issue, I do not see how Allstate's decision to litigate an unsettled question of law, a question on which other courts have reached differing results, could violate G. L. c. 93A. A respected trial judge agreed with Allstate's interpretation of its insurance policy, as do I, and as have several other courts. See *Overbeek* v. *Heimbecker,* 101

F.3d 1225 (7th Cir. 1996); *Farmers Alliance Mut. Ins. Co.* v. *Bethel,* 812 F.2d 412 (8th Cir. 1987); *Campbell* v. *Turner,* 744 So. 2d 1261 (Fla. Dist. Ct. App. 1999). See also *Weimer* v. *Country Mut. Ins. Co.,* 216 Wis. 2d 705 (1998).[9] Faced with a demand of $228,236 in postjudgment interest, and armed with significant precedent from other jurisdictions supporting its assertion that it owed no interest at all, Allstate did not violate G. L. c. 176D, § 3 (9), or G. L. c. 93A, in litigating what was until today an unsettled question of law in Massachusetts. I see no need for any trial on that aspect of the plaintiff's G. L. c. 93A claim.

---

[9]Albeit in an unpublished opinion, the United States Court of Appeals for the Sixth Circuit has also ruled that this version of an interest provision is satisfied by an offer to pay the policy limit in settlement of the claim. Dicus *vs.* Laipply, No. 92-3074 (6th Cir. 1992) (where policy terminated interest if insurer made "offer to pay," offer to pay $100,000 policy limit "in full satisfaction" of $250,000 judgment sufficed to avoid liability for interest). While an unpublished opinion lacks value as precedent, its existence at least confirms Allstate's view that such an interpretation of the contract is reasonable and plausible.