42 Mass. App. Ct. 417 417

James J. Mawn Enterprises, Inc. *v.* Liquor Liability Joint Underwriting Association.

JAMES J. MAWN ENTERPRISES, INC. *vs.* LIQUOR LIABILITY
JOINT UNDERWRITING ASSOCIATION.

No. 94-P-2019.

Suffolk. October 22, 1996. - April 3, 1997.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Insurance,* Liquor liability insurance, Construction of policy.

The plain terms of a claims-made policy issued by the Liquor Liability
Joint Underwriting Association properly excluded from coverage a
claim made during the policy period for bodily injury sustained prior to
that period. [419-421]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 29, 1993.

The case was heard by *Joseph A. Grasso, Jr.,* J., on a mo-
tion for summary judgment, and entry of final judgment was
allowed by *John C. Cratsley,* J.

*Gerald T. Anglin* for the plaintiff.

*Tamara S. Wolfson* for the defendant.

PERRETTA, J. On January 8, 1992, a patron of the Emerald
Isle Bar was hit on the head with a beer bottle and stabbed
with a knife. The bar was owned and operated by the plaintiff,
James J. Mawn Enterprises, Inc. (Mawn). When the patron
brought suit against Mawn in 1993, Mawn notified its insurer,
the defendant Liquor Liability Joint Underwriting Associa-
tion (JUA), which refused to defend or to indemnify on the
basis that the injury was sustained prior to the retroactive
date set out in the declarations page of its claims-made policy
with Mawn. Mawn then brought this action against JUA. A
Superior Court judge granted summary judgment in JUA's
favor. On appeal, Mawn argues that the inclusion of a retro-
active date in a "claims-made" policy is inconsistent with the
legislative policy of St. 1985, c. 223, "An act relative to liquor
legal liability insurance," and regulations promulgated by

JUA's board of directors pursuant to 211 Code Mass. Regs. § 22.07 (1986). We affirm the judgment.

1. *JUA's regulatory framework.* As defined by St. 1985, c. 223, § 1, liquor legal liability insurance is "insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of death or injury to any person as the result of negligence in the distribution, sale or serving of alcohol by any licensee." JUA is a nonprofit association created by the Legislature to provide such insurance to persons in Massachusetts who sell or serve alcoholic beverages and who cannot otherwise obtain it in the private market. See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 318 (1995). It must charge rates set by the Commissioner of Insurance (commissioner) at a level sufficient only to cover insured claims and operating expenses, and the commissioner must approve JUA's policy forms. See St. 1985, c. 223, §§ 2 and 6.

Section 4 of the statute required the commissioner to "promulgate a plan of operation . . . to become effective and operative no later than thirty days from the effective date of this act." The commissioner's plan appears in 211 Code Mass. Regs. §§ 22.00 et seq. (1986), and § 22.08 provides that an applicant for JUA coverage "may select at his or her option a claims-made or occurrence policy." This plan provision is consistent with the mandate expressed by the Legislature in § 6 of St. 1985, c. 223, that the "association shall offer policies on both a claims made and occurrence basis so that applicants may select either policy at their option."

2. *The policy.* At the outset, the policy announced: "THIS IS A CLAIMS-MADE POLICY. Various provisions in this policy define and restrict your coverage. Read the entire Policy carefully to determine your rights and duties and what is and is not covered." Almost immediately thereafter, the policy explains: "This insurance applies only (I) if a claim of 'damages' because of the 'bodily injury' is first made against an insured and received and recorded by us during the Policy period[1] *and* (ii) the 'bodily injury' occurs after the Retroactive Date shown in the Declarations and takes place in the 'coverage territory.' *The Retroactive Date shall be the effective date of this policy* except . . . [where the insured, unlike in

---

[1]There is no dispute that the claim was made during the policy period.

the present situation, has maintained continuous coverage from JUA]" (emphasis supplied).

Although the policy does not define the term "effective date," it does provide that " 'Bodily injury' means bodily injury, sickness or disease sustained by a person which *occurs during the policy period* including death resulting from any of these at any time" (emphasis supplied).

3. *Discussion.* In *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862, 863-864 (1990), the court explained that the distinction between occurrence and claims-made policies is: "Coverage is effective in an occurrence policy if the covered act or covered omission occurs within the policy period, regardless of the date of discovery. A claims-made policy covers the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission occurred." Based upon that latter statement, Mawn constructs the argument that JUA's claims-made policy impermissibly excludes from coverage a claim made during the policy period for bodily injury sustained prior to that period. According to Mawn's argument, the policy's definition of "bodily injury" is erroneous and the retroactive date provision is precluded by *Chas. T. Main, supra,* St. 1985, c. 223, and the commissioner's plan.

We do not agree with Mawn's reading of *Chas. T. Main.* In that case the insured argued that the rule that late notice of a claim under an occurrence-based policy did not bar coverage in the absence of a showing by the insurer of prejudice resulting from the late notice should be made equally applicable to claims-made policies. Although the court set out the basic difference between the two types of policies, it did so in explanation of why a claims-made insurer need not show prejudice from late notice. The issue before us, whether a claims-made policy can limit its coverage to events occurring during the life of the policy, was neither presented to nor considered by the court in that case.

Further, there is nothing in St. 1985, c. 223, or the commissioner's plan which requires JUA to restrict liquor liability insurance policies to a particular mode. All that is required is that JUA allow the insured to select either an occurrence or a claims-made policy and that the commissioner approve the form of the policy. See St. 1985, c. 223, § 6; 211 Code Mass. Regs. §§ 22.08 and 22.11.

Claims-made policies routinely provide a retroactive date. "A typical claims-made policy covers acts and omissions occurring either before or during the policy period; for prior acts, the policy may provide full retroactive coverage or it may only cover claims arising out of acts and omissions after the 'retroactive date' specified in the declarations." Ostrager & Newman, Handbook on Insurance Coverage Disputes § 4.02(b), at 98 (8th Ed. 1995). See also Keeton & Widiss, Insurance Law § 5.10(d)(3), at 598 (Practitioner's Ed. 1988).

Because the retroactive date specified in Mawn's policy coincides with its effective date, the coverage provided by JUA is effectively limited to acts occurring during the life of the policy. Such a provision was found permissible in *Brander* v. *Nabors*, 443 F. Supp. 764, 770 (N.D. Miss.), aff'd, 579 F.2d 888 (5th Cir. 1978), and Mawn has not presented any authority stating otherwise.[2] Instead, Mawn argues that the provision limiting coverage to bodily injury occurring after the retroactive date, identified as the effective date of the policy, is nullified because the policy does not specify either a retroactive date or an effective date.

"The first approach to the question of interpretation must be to read this insurance policy as one would read any ordinary contract — to inquire what the simplified, conversational language of the policy would mean to a reader applying normal reasoning or analysis. See *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Service, Inc.*, 359 Mass. 221, 225-226 (1971)." *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 384 (1988).

Although the terms "retroactive date" and "effective date" appear nowhere on the declarations page of the policy, the

_____

[2]*Brander* v. *Nabors*, 443 F. Supp. at 773, did go on to state, however: "We would be confronted with a more serious question of public policy if a 'claims-made' policy with neither a period of retroactive coverage nor a period of prospective coverage, but requiring notice to the insurer within the policy period, were involved; in that event, the insurance coverage would be effective only for the time premiums are paid, and during which notice of the claim would have to be given to the insurer. Such a policy would necessitate closer scrutiny from the standpoint of what period of coverage is reasonable in light of public policy." The medical malpractice policy in *Brander, supra* at 766, made provision for a period of prospective coverage in the event the policy was not renewed. Such prospective coverage was available to Mawn under the terms of the policy. In any event, Mawn makes no argument that the period of the coverage provided by the policy was so unreasonable as to violate public policy.

following does appear on that page: "POLICY PERIOD: From: 4/28/92 To: 4/28/93 Time: 12:01 AM." We think any reasonable reader of the policy would understand that its effective date was the beginning of the policy period clearly specified on the declarations page.[3] Mawn has made broad assertions that the policy provisions concerning its retroactive date and its definition of "bodily injury" created ambiguity as to the scope of the claims-made coverage and argues that, therefore, the policy should be construed in favor of the insured. We conclude, however, that the language of the provisions is, as matter of law, clear and unambiguous. It is well-settled that a "policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Stankus* v. *New York Life Ins. Co.*, 312 Mass. 366, 369 (1942). See also *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 147 (1982); *Nelson* v. *Cambridge Met. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991).

*Judgment affirmed.*

---

[3]Mawn also argues that confusion was caused by the fact that the invoice for the policy identified its effective date as November 1, 1991, with an expiration date of November 1, 1992. However, that invoice also provides, in bold print: "PAYMENT MUST BE MADE TO THE INSURER BEFORE THIS COVERAGE BECOMES EFFECTIVE." The executive director of JUA filed an affidavit in which he stated that the premium for the policy was not paid until April 28, 1992, the effective date of the policy. That affidavit was unrefuted.