Winslow, J.
The Capones (“Owners”) owned a residential property in Wrentham where they lived in one portion of the building and rented another portion to Roberta Keegan (“Tenant”). In September 1995, Owners met with one Fer-rara (“Broker”) and applied for a new policy of homeowners insurance to replace their existing homeowners insurance policy. The Broker was an independent contractor/broker for a local insurance agency, Insurance Advantage Agency, Inc. (“Agency”) under the terms of an Insurance Brokerage Agreement The Owners paid a premium which, together with their application, was to be forwarded by the Broker to the Agency. On September 10, the Broker requested the Owners to sign a Cancellation Request/Policy release regarding their existing policy which provided that “NEW COVERAGE HAS BEEN PLACED BY INSURANCE ADVANTAGE.” (Emphasis in original.) On October 17, 1995, the Broker provided a Certificate of Insurance to the Owners’ mortgage holder confirming the existence of new homeowners insurance coverage; the Broker claims he was authorized to provide the Certificate and the Agency asserts that the signature of the Agency’s principal on the Certificate was forged. By negligence of the Broker or the Agency, or both, the Owners’ replacement homeowners insurance policy never was placed with an insurance carrier and the Owners’ property was uninsured upon cancellation of their existing policy on October 13,1995.
On October 21,1995, the Tenant’s daughter (“Claimant”) fell at the Owners’ premises sustaining personal injury for which she made a claim against the Owners. By letter dated October 25, 1995 which confirmed a telephone conversation which occurred on October 23, the Broker alerted the Agency to the personal injury claim as well as to the fact that a “mishap” had caused the Owners to be uninsured at the time of the accident The Broker stated that “it is truly appropriate for [the Agency] to resolve this matter” involving the claim for personal injuries. By letter dated November 20,1995, the Broker forwarded the Agency a claim letter submitted by the Claimant’s attorney, reiterated that the Agency had failed to place homeowners coverage for the Owners and advised that the Agency “provide your error & omission insurance carrier information” to the Claimant’s attorneys. On August 17,1997, the Agency applied for insurance agents and brokers professional liability coverage — commonly referred to as “errors and omissions” insurance — with the defendant, *212 Mt Vernon Fire Insurance Company (“Mt Vernon”). In the portion of the application regarding “Claim Information,” the Agency denied that
any owner, partner, officer, director, employee, or independent contractor [was] aware of any circumstance, allegation, contention, or incident which may result in a claim being made against [Agency], its predecessor(s) in business, or any of its present or former owners, partners, officers, directors, employees, or independent contractors.
The Agency did not report its knowledge of the Claimanf s and the Owners’ potential claims against the Agency when it applied for errors and omissions coverage with Mt Vernon.
Based on the information in the Agency’s application, Mt Vernon issued an errors and omissions insurance policy to the Agency in August 1997. The policy provided in pertinent part at the Full Prior Acts Coverage Provision, that
Coverage shall apply to a Claim first made against the Insured arising out of a Wrongful Act committed prior to the expiration date of this Policy, provided that the Claim is first made during the Policy Period ... and written notice of said Claim is reported to the Company no later than 60 days after the end of the Policy Period....
However, coverage shall not apply to any Claim based upon or arising out of any Wrongful Act or circumstance likely to give rise to a Claim of which any Insured had knowledge, or otherwise had a reasonable basis to anticipate might result in a Claim, prior to... the inception of this Policy....
“Wrongful Act” is defined by the policy as “any actual or alleged negligent act, error or omission of an Insured arising solely from the Insured’s services rendered for others as an insurance agent, insurance broker...” Under the policy, “claim” means “any written notice received by an Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act” The policy also provided in part that
The Insureds represent that the particulars and statements contained in the Application are true and agree that (1) those particulars and statements are the basis of this Policy and are to he considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the Company; and (3) this Policy is issued in reliance upon the truth of such representations.
On November 3,1997, as part of the personal injury action by the Claimant against the Owners, the Owners filed a third-party claim against the Broker and the Agency for failure to procure their replacement homeowners insurance policy. In August 1998, Mt Vernon filed a declaratory judgment action in the federal court against the Agency seeking a declaration that it had neither a duty to defend nor indemnify the Agency in connection with the pending claims. The Agency failed to defend against the declaratory action and was defaulted in November 1998; declaratory judgment entered in favor of Mt. Vernon on January 4,1999. In November 1999, the Owners added Mt Vernon and the Agency’s principal as additional third-party defendants. The third-party action was then stayed pending the outcome of the Claimants underlying personal injury claim against the Owners. The Claimant and Owners then settled their litigation; as part of the settlement, the Owners assigned their rights against the third-party defendants to the Claimant.
Relying in part on the Agency’s violation of the Full Prior Acts Coverage provision, Mt Vernon moved for summary judgment which, after hearing, was allowed on June 2, 2001. The Claimant (as assignee of the Owners) then moved to amend or alter the award of summary judgment based on late-filed affidavits signed by *213 the Agency’s principal which the Court denied. The Claimant, as assignee, entered into an agreement for judgment with the Broker, Agency and Agency’s principal in setdement of her claims. The Claimant, in her own right and as assignee, appeals from the entry of judgment in favor of Mt Vernon. We affirm.
“Summary judgment is appropriate, of course, if there is no genuine issue as to any material feet and the moving party is entitled to a judgment as a matter of law. Mass. R Civ. E, Rule 56(c), 365 Mass. 824 (1974). See Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991).” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997). On appeal from a grant of summary judgment the Appellate Division “may consider any ground supporting the judgment” Massachusetts Municipal Wholesale Electric Company v. City of Springfield, 49 Mass. App. Ct. 108, 109 (2000). The Claimant argues that die Agency held the opinion that it was not responsible for the failure to place the Owners’ replacement homeowners policy and thus (fid not make any misrepresentation in the errors and omissions insurance application, notwithstanding the Agency’s actual knowledge of the circumstances. This argument fails as a matter of law. “The first approach to the question of interpretation must be to read this insurance policy as one would read any ordinary contract — to inquire what the simplified, conversational language of the policy would mean to a reader applying normal reasoning or analysis.” James J. Mawn Enterprises, Inc. v. Liquor Liability Joint Underwriting Ass’n, 42 Mass. App. Ct. 417, 420 (1997) (internal citations omitted). “hi interpreting the provisions of a policy, we construe and enforce unambiguous terms according to. their plain meaning. When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms.” Somerset Savings Bank v. Chicago Title Insurance Co., 420 Mass. 422, 427 (1995) (internal citations omitted).
Here, the plain language of the Full Prior Acts Coverage Provision provides that “coverage shall not apply to any Claim based upon or arising out of any Wrongful Act or circumstance likely to give rise to a Claim of which the Insured had knowledge. ...” It is undisputed that the Agency knew that the Owners were left uninsured by the acts or omissions of either the Agency or its Broker or both. The Agency knew of the pending claim for personal injuries asserted by the Claimant against the Owners. And it is undisputed that, as early as November 1995, the Broker had urged the Agency to provide errors and omissions coverage information to the Claimant’s attorney. The Agency’s assertion that it first learned of the “Claim” when it was named as a third-party defendant by Owners ignores the broader construction of the term “Wrongful Act” as defined in the policy. Under the plain language of the policy, the Agency (and the Claimant to the extent she now seeks to recover while standing in the shoes of the Agency) cannot assert coverage for an act, error or omission of which it had information but failed to disclose in its application. “Stated differently, the basic purpose of insurance is to protect against fortuitous events and not against known certainties. Parties wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty. Bartholomew v. Appalachian Ins. Co., 655 F.2d 27, 29 (1st Cir. 1981). It follows from this general principle that an insured cannot insure against the consequences of an event which has already begun. Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 63 (3d Cir. 1982).” SCA Services, Inc. v. Transportation Ins. Co., 419 Mass. 528, 532 (1995).
The Claimant asserts that the provisions of G.L.c. 175, §186 apply to prevent Mt Vernon from avoiding coverage. “Where statements in an insurance policy are expressly made conditions precedent to the insurer’s liability, and the answers to the questions on the application are critical to the insurer’s intelligent decision to issue the policy, the provisions of G.L.c. 175, §186, relating to misrepresentations in an application for insurance do not apply.” Massachusetts Mut. Life Ins. Co. v. Sullivan, 5 Mass. App. Ct. 816 (1977) (rescript). And see Krause v. Equitable Life Ins. Co., 333 *214 Mass. 200, 203 (1955) (“§186 does not apply to provisions in a policy which, by agreement of the parties, are made conditions precedent to the duty of performance on the part of the insurance company.”) This case presents an issue of coverage under fee plain language of fee insurance policy rather than an issue of rescission of a polity which otherwise would provide coverage on fee grounds of material misrepresentation. “Therefore, if fee accuracy of fee plaintiffs statements in fee proposal for insurance were treated as a condition precedent, then a material misrepresentation on fee application, in and of itself, would suffice to void fee policy, without necessitating additional proof under §186. Charles, Henry & Crowley Co. v. Home Ins. Co., 349 Mass. 723, 725 (1965) (policy language made fee accuracy of fee answers in an application for a jeweler’s block a condition precedent to recovery). See Shaw v. Commercial Ins. Co., 359 Mass. 601, 606 (1971). The standard for determining whether an insurance policy states a condition precedent has been set forth by fee Supreme Judicial Court in Charles, Henry & Crowley Co.:
[A] statement made in an application for a policy of insurance may become a condition of fee policy rather than remain a warranty or representation if (1) fee statement made by fee insured relates essentially to fee insurer’s intelligent decision to issue fee policy; and (2) fee statement is made a condition precedent to recovery under fee policy, either by using fee precise words ‘condition precedenf or their equivalent 349 Mass, at 726.
Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 106 (1997). The express policy language incorporating by reference fee application as well as fee Full Prior Acts Coverage is fatal to fee Claimant’s claims without resort to analysis under c. 175, §186.
Even if c. 175, §186 were applicable in these circumstances, summary judgment in favor of Mt Vernon still would prevail Compare Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 108 (1997) (“fee trial judge correctly construed fee information in fee plaintiff’s proposal for insurance as a warranty rather than a condition precedent to recovery. Accordingly, questions of fee plaintiff’s actual intent to deceive and increase fee risk of loss were property put to fee jury.”) “In Massachusetts, fee right of an insurer to rescind a policy based upon a misrepresentation in fee insured’s application for insurance is circumscribed by G.L.c. 175, §186. This statute provides: No oral or written misrepresentation or warranty made in fee negotiation of a polity of insurance by fee insured or in his behalf shall be deemed material or defeat or avoid fee polity or prevent its attaching unless such misrepresentation or warranty is made wife actual intent to deceive, or unless fee matter misrepresented or made a warranty increased the risk of loss.’ Thus, for summary judgment to obtain in a case of this nature, fee undisputed tacts must warrant fee conclusion as matter of law that fee insured made a misrepresentation, and that it was made either with deceitful intent or, if innocent; increased the insurer’s risk of loss.” TIG Ins. Co. v. Blacker, 54 Mass. App. Ct. 683, 686-687 (2001). For purposes of G.L.C. 175, §186, a fact is deemed material if it influences fee premium “A feet must be regarded as material, fee knowledge or ignorance of which would naturally influence fee judgment of fee underwriter in making fee contract at all, or in estimating fee degree and character of fee risk, or in fixing fee rate of fee premium ... If an insured felsety states a feet that would increase fee premium, fee misrepresentation is material.” Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128 (1997). There is no genuine issue of material feet regarding fee impact that fee Agency’s disclosure of fee circumstances involving fee Owners’ homeowners insurance would have had on fee Agency’s errors and omissions premium (assuming arguendo that Mt Vernon would have chosen to underwrite fee errors and omissions policy at alL) Aside from fee plain language of fee policy, fee Agency would not have prevailed in its claim pursuant to fee express requirements of G.Lc. 175, §186. The Claimant, as assignee of the various rights of fee other parties to their settlement and even as a putative third-party beneficiary of fee other parties’ deálings, stands in fee same position as the parties through whom she seels recov *215 ery. See Goldstein v. Bernstein, 315 Mass. 329, 332 (1943) (“the rights of the third persons injured to have recourse to the indemnity promised by the [insurance] company do not rise any higher than those of the insured.”) She too must tail on that basis.
The Claimant also asserts her right to recovery as assignee of the Owners against Mt Vernon on the theory that Mt Vernon’s declaratory action in federal court, to which she was not a party and of which she had no notice, constitutes a breach of G.L.c. 93A obligations. The cases on which the Claimant relies are inap-posite to the undisputed facts of this matter. Claimant had no direct or indirect contractual interest in the errors and omissions policy between Mt Vernon and the Agency. In all the circumstances, the motion judge’s denial of the Claimants motion to amend or alter the judgment was rightly decided as the legal basis for summary judgment and was not erroneous. See Smtth and Zobel, Rules Practice, §59.15 (1977 and supp.) (Rule 59(a) motion is appropriate where moving party asks “to correct such portions of the judgment which, for lack of legal and factual justification, are erroneous....”)
Accordingly, summary judgment in favor of Mt Vernon is affirmed.
So ordered.